# GENERAL MOTORS CORP. *v.* DISTRICT OF COLUMBIA.

No. 352.   Argued March 10, 1965.—Decided April 27, 1965.

554

*Donald K. Barnes* argued the cause for petitioner. With him on the briefs were *Aloysius F. Power, Thomas J. Hughes, Seymour S. Mintz, William T. Plumb, Jr.,* and *E. Barrett Prettyman, Jr.*

*Henry E. Wixon* argued the cause for respondent. With him on the brief were *Chester H. Gray* and *Milton D. Korman.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The District of Columbia Income and Franchise Tax Act of 1947 imposes a tax of 5% on the taxable income of every corporation, foreign or domestic, for the privilege of engaging in any trade or business within the District.[1] The Act further provides that "[t]he measure of the franchise tax shall be that portion of the net income of the corporation . . . as is fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District." [2]   The Act does not attempt to define a specific method whereby the portion of income "fairly attributable" to the District is to be determined, but authorizes the District Commissioners to prescribe regulations for such determination.[3]  However, the Commissioners' discretion in devising such regulations is not unfettered, as the Act further commands: "If the trade or business of any corporation . . . is carried on or en-

---

[1] D. C. Code 1961, § 47–1571a.

[2] D. C. Code 1961, § 47–1580.

[3] D. C. Code 1961, § 47–1580a.

gaged in both within and without the District, the net income derived therefrom shall . . . be deemed to be income from sources within and without the District." [4]

Acting pursuant to the authority delegated to formulate regulations governing the allocation of income, the District Commissioners promulgated regulations which provide: "Where income for any taxable year is derived from the manufacture and sale or purchase and sale of tangible personal property, the portion thereof to be apportioned to the District shall be such percentage of the total of such income as the District sales made during such taxable year bear to the total sales made everywhere during such taxable year." [5]

The petitioner, General Motors Corporation (G. M.), seeks review of an *en banc* decision of the Court of Appeals for the District of Columbia Circuit which approved the application of these regulations in determining the proportion of its total net income allocable to the District for the purpose of computing the franchise tax due.[6] General Motors attacks this method of computation on the grounds that it attributes to the District an unreasonably high proportion of its total income and that it is therefore both unauthorized by the relevant sections of the statute, and violative of the Interstate Commerce and Due Process Clauses of the Constitution. We agree that this method of allocation is not authorized by the D. C. Code and therefore reverse the judgment of the Court of Appeals without reaching the constitutional questions raised.

---

[4] *Ibid.*

[5] Section 10.2 (c) of the District of Columbia Income and Franchise Tax Regulations, relettered by amendment of July 24, 1956.

[6] 118 U. S. App. D. C. 381, 336 F. 2d 885, certiorari granted, 379 U. S. 887. An earlier decision (91 Wash. Law Rep. 650) of a panel of the Circuit Court, reversed by the decision here reviewed, had reached a contrary conclusion in affirming the decision of the District of Columbia Tax Court (CCH D. C. Tax Rep. ¶ 200–006).

General Motors is engaged in the manufacture and sale of motor vehicles, parts, and accessories. A Delaware corporation, the petitioner maintains its principal offices in New York and Detroit. It carries on no manufacturing operations within the District of Columbia, but it makes substantial sales to customers located within the District, chiefly retail automobile dealers. During the years in question, 1957 and 1958, its volume of sales to such customers aggregated $37,185,704 and $32,542,519, respectively.[7] Orders for these sales were received and filled outside the District, and the products were shipped to customers from G. M. manufacturing plants in Maryland, Delaware, and Michigan.

It is the claim of G. M. that the use of the "sales-factor formula" in the regulations is beyond the authority of the statute, because that formula taxes more of its net income than is "fairly attributable" to its District of Columbia business, particularly in light of the statutory provision which provides that the net income of a business carried on both within and without the District shall be deemed to be from sources within and without the District. We agree that the Commissioners exceeded their statutory authority by allocating income to the District in disregard of the express restrictions of the law.

We are normally content to leave undisturbed decisions by the Court of Appeals for the District of Columbia Circuit concerning the import of legislation governing the affairs of the District. However, at times application of the District Code has an impact not confined to the Potomac's shores, but reaching far beyond. This is such a case, for approval of the District Commissioners' regulations lends sanction to an apportionment formula seriously at variance with those prevailing in the vast majority of States and creates substantial dangers of

---

[7] Out of total sales of $9,461,855,874 in 1957 and $7,853,393,381 in 1958.

multiple taxation. Where a decision is of such significance to interstate commerce, and where the result reached involves statutorily unsupportable exertions of administrative power, the traditional reasons underlying our customary refusal to review interpretations of District law do not apply.

It is of course clear that the District Code does not expressly prescribe the use of any particular formula for the apportionment of income to sources within and without the District. On the contrary, the Code expressly authorizes the District Commissioners to promulgate regulations for the detailed apportionment of the income of multistate enterprises. But neither does the Code leave the Commissioners wholly unguided in their exercise of this authority. The Commissioners' authority is clearly limited by the provision (§ 47–1580a) which requires that the net income of a corporation doing business inside and outside the District be deemed to arise from sources situated in like fashion. To understand the meaning of this limitation, we need but take the simple example of a corporation which has its manufacturing facilities located wholly in Maryland and sells all of its products in the District of Columbia. Application of the Commissioners' formula would result in the allocation of 100% of the corporation's income to the District. Yet there can be no doubt that the business of the corporation is carried on both within and without the District, *viz.*, manufacture in Maryland and sales in the District. The statute does not say that net income shall be deemed to be derived from sources within and without the District only where the *sales* of any corporation are made both within and without the District, which is the effect of the Commissioners' regulation. The statute is phrased more broadly and commands apportionment of income to sources within and without the District whenever "the *trade or business* of any corporation . . . is carried on or

engaged in both within and without the District." As it is clear that some part of the trade or business of this hypothetical corporation is carried on without the District, the conclusion follows that the Commissioners must "deem" some part of the income of this corporation to be derived from sources outside the District.

It is said that the Commissioners' regulations are within the statutory grant of authority because the language "the net income derived therefrom" in § 47–1580a must be read to mean the total income of the corporation and not the "net income arising from activities in the District." The section must be so read, it is argued, because this reading least restricts the discretion of the Commissioners in devising apportionment formulae, and the traditional canon of broad construction of revenue measures demands that restrictions on the Commissioners' discretion be minimized. Applying this approach to the case at hand, it is argued that the Commissioners fulfilled their statutory obligation in apportioning the total income of G. M. to sources inside and outside the District in accordance with the geographical distribution of the company's sales.

Where, as in this case, some portion of a corporation's income is derived from manufacture and sale outside the District, there is no question that the statute requires the Commissioners to allocate that portion to sources outside the District.[8] However, it does not follow that the making of that kind of allocation alone relieves the Commissioners of their statutory responsibility to apportion that part of a corporation's income arising from manufacture outside and sale inside the District limits. As to

---

[8] This is not to say that the Commissioners need engage in detailed segmentation of corporate income to source and specific allocation thereof. All that is required is that the formula adopted for general application take account of the geographical spread of the major dimensions of a business.

this segment of its income, G. M. is in precisely the same situation as the hypothetical corporation manufacturing wholly in Maryland and selling solely in the District; that is, it is carrying on a business partly within and partly without the District limits. It is not enough under the statute to require apportionment of income derived from District sales only in the case where the taxed corporation has no sales outside the District. The inescapable and determinative fact in both the hypothetical case and the case before us is that the company carries on business both inside and outside the District with respect to the income which it derives from the sales made within the District. Consequently, § 47–1580a requires that some portion of this income be deemed to arise from sources outside the District.

The conclusion which we reach by analysis of the plain language of the statute also finds support in the consequences which a contrary view would have for the overall pattern of taxation of income derived from interstate commerce. The great majority of States imposing corporate income taxes apportion the total income of a corporation by application of a three-factor formula which gives equal weight to the geographical distribution of plant, payroll, and sales.[9] The use of an apportionment formula based wholly on the sales factor, in the context of general use of the three-factor approach, will ordinarily result in multiple taxation of corporate net income; for

---

[9] Of the 38 States requiring payment of such taxes, 26 employ varieties of a three-factor formula which takes into account the geographical distribution of a corporation's payroll, property and sales, generally giving equal weight to each factor. Another three use substantially the same formula, replacing the payroll factor with the broader category of manufacturing costs. Yet another three make use of a formula which incorporates the sales and property factors. Only four taxing jurisdictions use formulae based solely on the geographic distribution of corporate sales. See H. R. Rep. No. 1480, 88th Cong., 2d Sess., at 119.

the States in which the property and payroll of the corporation are located will allocate to themselves 67% of the corporation's income, whereas the jurisdictions in which the sales are made will allocate 100% of the income to themselves. Conversely, in some cases enterprises will have their payroll and plant located in the sales-factor jurisdictions and make their sales in the three-factor jurisdictions so that only 33% of their incomes will be subject to state taxation. In any case, the sheer inconsistency of the District formula with that generally prevailing may tend to result in the unhealthy fragmentation of enterprise and an uneconomic pattern of plant location, and so presents an added reason why this Court must give proper meaning to the relevant provisions of the District Code.

Moreover, the result reached in this case is consistent with the concern which the Court has shown that state taxes imposed on income from interstate commerce be fairly apportioned. In upholding taxes imposed on corporate income by Connecticut and New York and apportioned in accordance with the geographical distribution of a corporation's property, this Court carefully inquired into the reasonableness of the apportionment formulae used.

> "The profits of the corporation were largely earned by a series of transactions beginning with manufacture in Connecticut and ending with sale in other States. In this it was typical of a large part of the manufacturing business conducted in the State. The legislature in attempting to put upon this business its fair share of the burden of taxation was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. . . . There is . . . nothing in this record to show that the method of apportionment adopted by the State was inherently arbitrary, or that its

application to this corporation produced an unreasonable result." *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120–121.

See also *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Comm'n,* 266 U. S. 271. While the Court has refrained from attempting to define any single appropriate method of apportionment, it has sought to ensure that the methods used display a modicum of reasonable relation to corporate activities within the State. The Court has approved formulae based on the geographical distribution of corporate property and those based on the standard three-factor formula. See, *e. g., Underwood Typewriter Co.* v. *Chamberlain, supra; Butler Bros.* v. *McColgan,* 315 U. S. 501. The standard three-factor formula can be justified as a rough, practical approximation of the distribution of either a corporation's sources of income or the social costs which it generates. By contrast, the geographic distribution of a corporation's sales is, by itself, of dubious significance in indicating the locus of either factor. We of course do not mean to take any position on the constitutionality of a state income tax based on the sales factor alone. For the present purpose, it is sufficient to note that the factors alluded to by this Court in justifying apportionment measures constitutionally challenged in the past lend little support to the use of an exclusively sales-oriented approach. In construing the District Code to prohibit the use of a sales-factor formula, we sacrifice none of the values which our scrutiny of state apportionment measures has sought to protect.

In sum, we find that the language of the authorizing statute does not permit the application of an apportionment formula which makes use of the sales factor alone. The conclusion which we draw from examination of the statutory language finds support in the conflict with other taxing jurisdictions which would result from a contrary view. It finds further support in the continuing concern

for fair apportionment which this Court has displayed over the years in scrutinizing state taxing statutes. As the District Code confides in the Commissioners the authority to prescribe detailed regulations, it is not for us to make specific prescription, and we limit ourselves to holding that the present regulation is unauthorized by the statute. Accordingly, the judgment of the Court of Appeals for the District of Columbia Circuit is reversed and the case remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS, agreeing with the Court of Appeals that the tax here is authorized by the controlling statute, would affirm the judgment.