16 N.Y.2d 320 (1965)
In the Matter of Federated Department Stores, Inc., Appellant,
v.
Lawrence E. Gerosa, as Comptroller of the City of New York, Respondent.
Court of Appeals of the State of New York.
Argued October 19, 1965.
Decided December 30, 1965.
George G. Gallantz, Wilbur H. Friedman, Robert J. Levinsohn and Michael Hertzberg for appellant.
Leo A. Larkin, Corporation Counsel (Stanley Buchsbaum and Samuel J. Warms of counsel), for respondent.
Chief Judge DESMOND and Judges DYE, FULD, BURKE and SCILEPPI concur with Judge BERGAN; Judge VAN VOORHIS dissents in a separate opinion.
*322 BERGAN, J.
Petitioner is a Delaware corporation with a principal office in Cincinnati, Ohio, and operates 42 retail and specialty stores in 11 States. It owns three large department stores in New York City  an Abraham & Straus store in Brooklyn, the Bloomingdale's store in Manhattan and the one in Queens. Some of the business done in the three New York City stores is interstate. Deliveries are made to customers in New Jersey and Connecticut on sales made in New York.
*323 In conformity with the authorization of section 24-a of the General City Law, the City of New York has enacted a General Business and Financial Tax Law which imposes an excise tax for the privilege of carrying on business in the city.
But since the city may not impose a tax on the entire interstate business done by a taxpayer (Adams Mfg. Co. v. Storen, 304 U. S. 307), the local law authorizes the Comptroller to prescribe a method of allocation of that portion of the interstate transactions which for local tax purposes are properly attributable to New York (Administrative Code of City of New York, § B46-2.0, subd. b). The Comptroller, with this purpose in view, has laid down a formula of apportionment (General Business and Financial Tax Regulations, art. 211, § I, "Regular Allocation Formula").
An earlier method of allocation prescribed by the Comptroller was held invalid by this court in 1954 (Matter of Gulf Oil Corp. v. Joseph, 307 N.Y. 342). The basis for decision was that the method established a minimum of 33 1/3% in attributing interstate business to city activity. This the court ruled improper, i.e., "and we hold that the comptroller in using such minimum figures acted arbitrarily and out of harmony with the declared legislative purpose of taxing only that part of the interstate receipts which is properly attributable and allocable to the doing of business in the city" (p. 349).
Following this decision the Comptroller undertook to devise a new formula of allocation. He eliminated the absolute minimum which the court had held invalid. He prescribed a rather complicated scheme of allocation which weighs into consideration the total property and total wages within and without the city deemed to have produced the interstate business; the amount of wholly taxable business (that done in intrastate transactions); the amount of wholly untaxed business (that done outside the State), and the allocable business (that done in interstate commerce emanating from the city).
As applied to the petitioner's allocable interstate business emanating from New York City, this formula treats about 45% to 48% of the receipts from that business as taxable in New York in the years 1953 to 1959 which are the subject of the present article 78 proceeding to review the Comptroller's determination.
*324 Petitioner vigorously attacks the formula and suggests that it is both unfair and unconstitutional. But when it is kept in mind that what the formula purports to do is to measure and apportion the share of the interstate business attributable to New York activity, its actual impact on this petitioner seems entirely reasonable.
Even interstate business "must pay its way" (Postal Tel.-Cable Co. v. Richmond, 249 U. S. 252, 259). The ultimate test of local taxability is whether the tax attaches or not to activities "carried on within the state" (Gwin, White & Prince, Inc. v. Henneford, 305 U. S. 434, 439).
Any formula purporting to be general in application must use some artificial assumptions. Business enterprises differ greatly, and the activity in New York of a shoe manufacturing enterprise which manufactures in Virginia and sells in New York is different in the apportionment of its activity than a retail sales enterprise which does all the relevant selling in New York and is serviced in some managerial aspects in Ohio. The formula, however, must usually serve different kinds of enterprises. What the formula must offer is not perfection but a "rough approximation" of a just allocation (Illinois Cent. R. Co. v. Minnesota, 309 U. S. 157, 161; Harvester Co. v. Evatt, 329 U. S. 416, 422-423).
Although the petitioner owns many department stores in other States, the contribution which these operations make to the sale of the three New York City stores of merchandise delivered to New Jersey and Connecticut is, so far as the record demonstrates, nil; and while the policy-making and accounting, and other related control procedures pursued in the main office at Cincinnati undoubtedly play some part in the interstate activity of the New York City stores, the part played is not shown to have large significance in a fair allocation of the basic activity which produced the sales.
Thus, when the net result of the application of the formula, complicated though it may be, to the actual operation of the petitioner's activities in New York is that less than half of the allocable business attributed to sales made in New York resulting in out-of-State shipments are regularly attributed to the New York activity, no unfairness is demonstrated. The business of retail sales is a thing closely related to the place where a *325 store is. When sales are made, even to a customer who comes in from New Jersey or Connecticut, an activity in large part traditionally local exists.
Heavy reliance is put by petitioner on General Motors v. District of Columbia (380 U. S. 553). But decision there turned entirely on a statutory construction of the District of Columbia Code which the court held did not authorize the challenged allocation. The court expressly noted it did not reach the constitutional problem (p. 555). The power of taxation on the local activities of large enterprises ought not to be viewed narrowly (Ford Motor Co. v. Beauchamp, 308 U. S. 331).
The petitioner's attack on the formula of the Comptroller is essentially based on what could happen when it is applied under certain assumed situations, rather than on any unfair or unjust apportionment to the actualities of petitioner's business or to the petitioner's actual experience upon application of the formula. The argument of the city in this court that "the petitioner is not making any direct assertion that the formula has resulted in attributing an excessive share of the interstate receipts to New York City" and that "[i]t limits its attack to the nature of the formula, asserting that it is unusual in nature and contains arbitrary or unreasonable provisions" is not adequately met by petitioner.
The formula by which a percentage of allocation of interstate business to city activity is calculated is laid out in the Comptroller's regulations in this text:
"(a) The Property Factor. A percentage is to be computed on the basis of a fraction.
"The numerator is the value of so much of the property in the City as may be deemed attributable to producing the allocable receipts. It is arrived at by taking such proportion of the property in the City as the allocable receipts bear to the sum of the allocable and the wholly taxable receipts. This eliminates from the property factor the portion of the property within the City attributable to producing wholly taxable receipts.
"The denominator is the value of so much of the property within and without the City as may be deemed attributable to producing the allocable receipts. It is arrived at by taking the sum of two figures. The first figure is the amount in the numerator. To this is added such proportion of the value of *326 the property outside the City as the allocable receipts bear to the sum of the allocable and the non-taxable receipts, thus eliminating from the property factor the portion of the property outside of the City attributable to non-taxable receipts.
"(b) The Wages and Salaries Factor. A percentage is computed on the basis of a fraction arrived at by the same method as above, except that wages and salaries constitute the factor rather than property.
"(c) Add the above two percentages, divide by two, and multiply the allocable receipts by the result. Where the resultant average of the percentages exceeds 66 2/3%, it shall be reduced to 66 2/3% for the purpose of allocation. The product will be the portion of the allocable receipts to be included in the measure of the tax."
Petitioner's main argument for invalidity of this formula suggests that the tax tends to increase as a taxpayer's out-of-State and hence wholly nontaxable receipts increase when the relative amounts of property and wages are constant. If one carries through calculations required by the formula, keeping the property and wages at the same level, this can be seen to be borne out.
The city argues, however, that it would not normally be expected that such an actual situation would occur. In spite of this theoretical possibility under the formula, the city contends that in its application to petitioner's business it falls within the test laid down in Butler Bros. v. McColgan (315 U. S. 501, 506) as a method "fairly calculated" to assign to New York the proportion reasonably attributable to business done there.
By way of illustration the city observes that, if all of the out-of-State property of petitioner were an Ohio store which had $9,000,000 in receipts and the allocable (interstate) receipts of the New York stores were $1,000,000, the formula would assume that one tenth of the property and wages of the Ohio store were devoted to creating the New York allocable receipts. If, with all wages and property unchanged, the Ohio store's receipts were increased to $19,000,000 while the New York allocable receipts remained at $1,000,000, the formula would assume that only one twentieth of the Ohio wages and property had been devoted to creating the New York allocable receipts.
*327 "As a result", argues the city, "the New York City property and wages treated as creating the allocable receipts would become a larger proportion of the total property and wages treated as creating such receipts. * * * In a year when the New York City allocable receipts is a larger proportion of both types of receipts, the share of the Ohio property and wages attributed to the New York allocable receipts is greater. In a year when the New York City allocable receipts remain unchanged but the total of both types of receipts is increased because the Ohio sales have increased, the share of the Ohio property and wages attributable to the New York City allocable receipts necessarily decreases."
Although the formula, which, as it has been noted, was written for many different types of businesses, treats the out-of-State property and wages as helping materially to create the New York allocable sales in a business such as petitioner's, the part actually played by the out-of-State activity in the creation of the allocable sales could be quite insignificant. Thus the city contends that the actual application of the formula "is overgenerous to a taxpayer in petitioner's circumstances".
Whether it is overgenerous or not, its application is not demonstrated to be unfair or to represent an unreasonable thrust on the interstate activities of petitioner. There could well be circumstances where the formula, mechanically applied, would operate unfairly and impose too heavy a burden on interstate activities. To some extent the 66 2/3% ceiling built into the formula would tend to avoid this.
Theoretical calculations under the formula can be pursued where the influence of out-of-State investment, wages and sales activity would be unfairly thrown out of focus as related to New York transactions to cast too heavy a burden on interstate activity. If such cases actually occur, the Comptroller has the power, and it would be his duty, to make adjustments which would keep the formula within a reasonable attribution to the local business activity in the city, by providing an alternative method of apportionment as article 210 of his published regulations allows. The petitioner has not demonstrated unfairness in the actual impact on it of the tax assessments of which it complains.
The order should be affirmed, with costs.
*328 VAN VOORHIS, J. (dissenting).
This appeal involves the validity of the allocation formula for the imposition of the New York City General Business and Financial Tax (a business privilege tax) on interstate sales  mostly to customers in New Jersey and Connecticut  made by Bloomingdale's department stores in Manhattan and Queens and by Abraham & Straus in Brooklyn. These are 3 of the 42 retail and specialty stores in 11 States owned by appellant Federated Department Stores, Inc. The tax is imposed under rules and regulations made by the Comptroller authorized by subdivision b of section B46-2.0 of the New York City Administrative Code, which provides that where a receipt in its entirety cannot be subjected to this tax by reason of the provisions of the Constitution of the United States (or any other provision of law) only that part of such receipt which is properly attributable and allocable to the doing of business in the city shall be taxed thereunder. A previous formula adopted by the Comptroller, known as a Massachusetts-type formula, was invalidated in Matter of Gulf Oil Corp. v. Joseph (307 N.Y. 342), for the reason that in preparing it the Comptroller departed from the customary method of allocation by providing that if the resultant average taxable percentage "is less than 33 1/3% it shall be increased to 33 1/3% for the purpose of allocation." The imposition of this minimum, without regard to whether it represented a fair allocation, was held to have been arbitrary and to subject the taxpayer to the risk of multiple taxation by other States. Instead of simply eliminating the minimum, a new formula was devised by the Comptroller, bearing merely superficial resemblance to the usual manner of allocation, which was designed to increase the tax by a method of apportionment which was fully as arbitrary as had been the illegal minimum.
The new formula is described in the majority opinion, and need not be repeated. The city admits at page 29 of its brief that the attack upon the formula by the petitioner is true, that assuming other factors remain the same:
"(1) As taxpayer's wholly out-of-City receipts increase, the tax on allocable (i.e., interstate) receipts increases;
"(2) As taxpayer's wholly out-of-City receipts decrease, the tax on allocable receipts decreases;
*329
"(3) As taxpayer's wholly in-City receipts increase, the tax on allocable receipts decreases; and
"(4) As taxpayer's wholly in-City receipts decrease, the tax on allocable receipts increases."
The fluctuations in the tax resulting from the application of this formula are unrelated to rational apportionment. There is no rational basis, as I view it, whereby the tax on interstate receipts can be increased as the taxpayer's wholly-out-of-city receipts increase, or whereby the tax on interstate receipts is increased if the taxpayer's wholly-in-city receipts decrease. Neither is there any rational relationship in the other enumerated applications of the formula.
The majority opinion appears to recognize that the application of this formula to other types of business may prove to be arbitrary, and result in invalidity, but considers that (formulas aside) taxing 45% to 48% of the interstate sales of Bloomingdale's and Abraham & Straus is not unreasonable. Neither the Administrative Code nor the commerce clause nor the Fourteenth Amendment of the United States Constitution nor the New York State Constitution admits of assessing this tax on interstate sales against different businesses on a mere ad hoc basis. If that could have been done, the court would have held in Gulf Oil Corporation that however legally offensive the 33 1/3% minimum might have been, recovery of 33 1/3% would be allowed if it seemed fair to charge that amount against that taxpayer anyhow. In fact, under the Massachusetts-type formula, its percentages were 32.2%, 30.85% and 31.84% during the years involved.
The validity of this formula has to be tested, it seems to me, on what can be done under it, not by whether we consider that the result reached would have been fair if some other kind of formula had been promulgated which would have come out the same way. The court cannot decide the case on an ad hoc basis, it seems to me, any more than the City Comptroller could have done so by assigning to each taxpayer separately a percentage which, in his wisdom, he deemed should in the individual case be controlling in determining what proportions of interstate sales were subject to this tax, without prescribing any rules or regulations of general application as directed by subdivision b of section B46-2.0 of the Administrative Code.
*330 This formula, in my view, is invalid as contrary to that statute, and to the applicable provisions of the United States and New York State Constitutions.
The order of the Appellate Division and the determination of the City Comptroller should be reversed, and the matter remitted to the Comptroller for further proceedings.
Order affirmed.