[L. A. No. 29184.   In Bank.   Nov. 4, 1968.]

McDONNELL DOUGLAS CORPORATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

Forster, Gemmill & Farmer, James H. Knecht, Jr., Louis Lieber, Jr., and M. B. Hunt for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and John J. Klee, Jr., for Defendant and Respondent.

BURKE, J.—In this corporate franchise tax controversy, a hearing was granted by this court, after decision by the Court of Appeal, Second Appellate District, Division Three, for the purpose of giving further study to the problems presented. After such study we have concluded that the opinion of the Court of Appeal, prepared by Presiding Justice Ford, correctly treats and disposes of the issues involved, and with certain further comments pertinent to contentions urged, it is adopted as and for the opinion of this court. Such opinion (with appropriate deletions and additions as indicated) is as follows:[1]

The plaintiff, formerly named Douglas Aircraft Company, has appealed from a judgment for the defendant Franchise Tax Board in an action for a refund of a portion of the corporation franchise taxes paid by the plaintiff for the taxable fiscal income years 1942 to 1945.[2] The principal amount of the

---

[1]Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. (*Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381, 383, fn. 1 [19 Cal.Rptr. 662, 369 P.2d 262]; *Smith* v. *Anderson* (1967) 67 Cal.2d 635, 637, fn. 1 [63 Cal.Rptr. 391, 433 P.2d 183].)

[2]The defendant board is the successor of the Franchise Tax Commissioner whose reallocation is herein involved.

With respect to the four years involved in this case, section 10 of the Bank and Corporation Franchise Tax Act (Stats. 1939, pp. 2944-2945) was applicable. It was therein provided as follows: "When the income of the bank or corporation is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property or by reference to any of these or other factors or by such other method of allocation as is fairly calculated to determine the net income derived from or attributable to sources within this State. Income from business carried on partly within and partly without this State shall be allocated in such a manner as is fairly calculated to apportion such income among the States or countries in which such business is conducted. Income attributable to isolated or occasional transactions in States or countries in which the taxpayer is not doing business shall be allocated to the State in which the taxpayer has its principal place of business or commercial domicile. Income derived from or attributable to sources within this State includes income from tangible or intangible property located or having a situs in this State and income from any activities carried on in this State, regardless of whether carried on in intrastate, interstate or foreign commerce.

"If the commissioner reallocates net income upon his examination of any return, he shall, upon the written request of the taxpayer, disclose to him the basis upon which his reallocation has been made."

refund sought is approximately one million dollars. The primary question to be resolved is whether the plaintiff, in determining its income from California sources by means of a three-factor formula of sales, property and payroll, properly included government-owned property as well as property owned by the plaintiff in calculating the property factor. Alternatively, the plaintiff raises the question of whether the property factor should be disregarded entirely and only a two-factor (payroll and sales) formula used to determine the allocation of the plaintiff's income to California.

The parties stipulated in writing as to the pertinent facts, to some of which reference will now be made. The plaintiff was a corporation incorporated in the State of Delaware and qualified to do business in the State of California. Its principal office for the transaction of its business was in the City of Santa Monica, California, and its commercial domicile was in the State of California. During the fiscal income years beginning December 1, 1941, and ending November 30, 1945, the plaintiff was principally engaged in the business of constructing aircraft for the United States government, doing business both interstate and intrastate. Construction of aircraft was performed pursuant to both fixed-price and cost-plus-fixed-fee ("C.P.F.F.") contracts with the United States government. Under fixed-price contracts, the plaintiff was paid an agreed price for a particular model of aircraft. Under C.P.F.F. contracts, the plaintiff was directly reimbursed for costs incurred in the performance of the contract[3] and was paid a fixed fee which was negotiated between the parties. Virtually all the fixed-price contracts were performed in California.

With respect to its aircraft manufacturing business, Douglas operated three manufacturing plants and one modification plant in California, two manufacturing plants in Oklahoma and one manufacturing plant in Illinois. With the exception of two plants, the Santa Monica and El Segundo plants in California, the facilities were owned entirely by the United States government. In addition, the United States government owned facilities in and adjacent to the Santa Monica and El Segundo plants which were operated by the plaintiff as part of those plants. The plaintiff did not pay rent or other compensation to the United States government for the use of the

[3] One of the reimbursable costs was depreciation on Douglas-owned property.

government-owned property and facilities. The fixed fee, as a percentage of estimated cost, which was negotiated between the plaintiff and the United States government on C.P.F.F. contracts, did not differ between contracts performed in the plaintiff's facilities and contracts performed in government-owned facilities. The place of performance was limited by the United States government's previous direction as to which models of airplanes were to be manufactured in a particular plant and by specification in the contract of the plant of delivery.

In preparing its California Bank and Corporation Franchise tax returns for the taxable fiscal years 1943 to 1946, inclusive (being the fiscal income years 1942 to 1945, inclusive), the plaintiff determined its income from California sources by means of a three-factor formula of sales, property and payroll. The property allocated by the plaintiff to California for the fiscal income year 1942 was 65.95 percent; for the year 1943 it was 45.04 percent; for the year 1944 it was 36.13 percent; and for the year 1945 it was 31.88 percent. The plaintiff computed the property factor by including the tangible properties owned and used by it in the production of aircraft and the tangible properties owned by the United States government and used by the plaintiff in the production of aircraft. The defendant recomputed the property factor for the years involved by including therein only tangible property owned and used by the plaintiff and excluding property owned by the United States government and used by the plaintiff. As thus computed by the defendant, the property factor for the fiscal income year of 1942 was determined to be 100 percent; for the year 1943, 99.94 percent; for the year 1944, 99.37 percent; and for the year 1945, 93.67 percent.

In each of its claims for refund of the additional taxes and interest paid, the ground specified by the plaintiff was as follows: ''The Franchise Tax Commissioner erroneously eliminated the value of Government-owned property from the tangible property factor in the formula for allocation of income within and without the State of California. The claimant contends that by such action the tangible property factor becomes valueless for use in any formula having for its purpose a fair allocation of income as between in and out of the State of California.'' The Franchise Tax Commissioner denied the claims for refund. The State Board of Equalization, after a hearing, affirmed the denial of the

refund and subsequently denied a petition for a rehearing. The present action was therefore timely commenced.

In *El Dorado Oil Works* v. *McColgan,* 34 Cal.2d 731, at page 741 [215 P.2d 4], [   ] [this] court stated: "No method of allocation can precisely determine the amount of income attributable either to any given geographic area or to any given part of a series of business transactions culminating in the realization of a profit, and 'any effort' in that regard 'must be more or less arbitrary and fictitious' (*Gorham Mfg. Co.* v. *Travis,* 274 F. 975, 978) as a matter of practical tax administration. In short, as was recently said by the Supreme Court of the United States in sustaining the validity of a franchise tax assessment, the 'practical impossibility' of a state's achieving a perfect apportionment of expansive, complex business activities . . . [makes] "rough approximation rather than precision" . . . sufficient' in the formula allocation of income from a unitary business. (*International Harvester Co.* v. *Evatt,* 329 U.S. 416, 422 [91 L.Ed. 390, 395, 67 S.Ct. 444].)"

The use of a formula consisting of the three factors of property, payroll, and sales often suffices to apportion to a state that part of a corporation's net income fairly attributable to business done within the state. (*General Motors Corp.* v. *District of Columbia,* 380 U.S. 553, 559 [14 L.Ed.2d 68, 72, 85 S.Ct. 1156]; *Butler Bros.* v. *McColgan,* 315 U.S. 501, 509 [86 L.Ed. 991, 997, 62 S.Ct. 701]; *El Dorado Oil Works* v. *McColgan, supra,* 34 Cal.2d 731, 744-745; *Pacific Fruit Express Co.* v. *McColgan,* 67 Cal.App.2d 93, 96 [153 P.2d 607].)[4]

[4]In the *General Motors* case, the United States Supreme Court stated (380 U.S., at p. 559 [14 L.Ed.2d at p. 72]): "The great majority of States imposing corporate income taxes apportion the total income of a corporation by application of a three-factor formula which gives equal weight to the geographical distribution of plant, payroll, and sales." In a subsequent portion of the opinion the United States Supreme Court stated (380 U.S., at p. 561 [14 L.Ed.2d at p. 73]): "The standard three-factor formula can be justified as a rough, practical approximation of the distribution of either a corporation's sources of income or the social costs which it generates."

In Altman & Keesling, Allocation of Income in State Taxation (2d ed. 1950), at page 97, the following statement is made: "It is believed that the only proper method for making the apportionment is to employ a formula which gives weight to the various factors responsible for the earning of income, such as property, which reflects either the capital investment or the general size and importance of the business, payroll, which indicates the value to the taxpayer of the services of its employees, and sales, which give weight to the activity of the taxpayer in obtaining customers without which, of course, the business would not function."

■ Discretion as to the factors to be used was placed in the commissioner and his successor, the Franchise Tax Board. As stated in *RKO Teleradio Pictures, Inc.* v. *Franchise Tax Board*, 246 Cal.App.2d 812, at page 819 [55 Cal.Rptr. 299] : "The Franchise Tax Board is given discretion in the selection of [the] factors to be utilized in a tax formula (*El Dorado Oil Works* v. *McColgan*, [*supra*], 34 Cal.2d 731, 736 [215 P.2d 4]) and where, as here, the taxpayer contends that the formula is arbitrary and reaches an unreasonable result, the burden is on the taxpayer to establish such facts by clear and convincing evidence." (see *Butler Bros.* v. *McColgan, supra,* 315 U.S. 501, 507 [86 L.Ed. 991, 996].)

■ In the determination of the question of whether the plaintiff has sustained the burden placed upon it, [    ] guidance is found in the reasoning of [    ] *John Deere Plow Co.* v. *Franchise Tax Board*, 38 Cal.2d 214, at pages 224-225 [238 P.2d 569] : "The only requirement is that the formula used be not intrinsically arbitrary or produce an unreasonable result. . . . ■ In the apportionment of a unitary business the formula used must give adequate weight to the essential elements responsible for the earning of the income . . . but its propriety in a given case does not require that the factors appropriately employed be equally productive in the taxing state as they are for the business as a whole. Varying conditions in the different states wherein the integrated parts of the whole business function must be expected to cause individual deviation from the national average of the factors in the formula equation, and yet the mutual dependency of the interrelated activities in furtherance of the entire business sustains the apportionment process."

■ The plaintiff directs attention to the fact that the plaintiff's income was earned almost entirely under C.P.F.F. contracts and was rigidly fixed irrespective of ownership of the property.[5] It is then argued that, by giving weight only to the property owned by the plaintiff all or almost all of which was located in California, and excluding government-owned property, the defendant's allocation formula was not "fairly calculated" to allocate income to California. It is further argued that the function of the property factor in the allocation formula is merely to afford another index for measuring activity between states and that, accordingly, property should

---

[5]However, as noted in footnote 3, a reimbursable cost was depreciation on property owned by the plaintiff.

be included whether owned or merely used by the taxpayer. It is asserted that the "defendant's theory of ownership as a measure of 'invested capital' has no application in this case, since ownership of property was not a factor which contributed materially to income." Attention is also directed to the fact that under the exigencies of wartime the plaintiff did not have the conventional business alternatives of owning or not owning the property it used and, it is argued, the plaintiff has been unfairly penalized with respect to matters over which it had no control.

In resolving the question presented in this case this court must be guided by the statutory provision that "the tax shall be measured by the net income derived from or attributable to sources within this State" and by the requirement that such income "shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property or by reference to any of these or other factors or by such other method of allocation *as is fairly calculated to determine the net income derived from or attributable to sources within this State.*" (Italics added.)

The governing principle of law was succinctly stated in *General Motors Corp.* v. *District of Columbia, supra,* 380 U.S. 553, at page 561 [14 L.Ed.2d 68 at p. 73] : "While the Court has refrained from attempting to define any single appropriate method of apportionment, it has sought to ensure that the methods used display a modicum of reasonable relation to corporate activities within the State."

No question is raised as to the factors of sales[6] and payroll as used in the formula in this case. In determining the propriety of the use of a property factor limited to property owned by the plaintiff, as required under the commissioner's reallocation, consideration must be given to the nature of the cost-plus-fixed-fee contracts under which the plaintiff manufactured and sold most of the aircraft ordered by the United States government in the years herein in-

---

[6]Because of the circumstances of wartime production the sales factor was determined by the location of the plants where particular aircraft were produced. As explained in the plaintiff's brief: "In determining the sales factor, it is and was customary for the defendant to allocate sales to the place where sales solicitation occurs. This was not feasible during the war years, and the defendant determined that the sales factor should be computed according to the location of the plants where the costs of aircraft manufacture were incurred."

volved.[7] Under such contracts plaintiff was reimbursed for its actual expenses, but the fixed fee was based upon the total estimated cost as set forth in the contract. The fixed fee was the same whether the contract was to be performed in a plant owned by the plaintiff or in a government-owned plant, except that (as has been noted in fn. 3 of this opinion) depreciation on Douglas-owned property was a reimbursable cost. With respect to each of such contracts the use of the plant—whether owned by the plaintiff or provided by the government—was essential to the performance of the contract and the consequent production of income.[8] In each year, with the exception of 1942, the total value of government-owned property was substantially in excess of that of plaintiff-owned property. (In 1942 the government-owned property, valued at cost without allowance for depreciation, was $32,985,698.60.) Under such circumstances the commissioner's reallocation, based in part upon the use of a property factor limited to property owned by the plaintiff, results in distortion when that factor is weighed equally with the sales and payroll factors.[9] [For a comparative example graphically demonstrating the distortion under varying circumstances, see Altman & Keesling, Allocation of Income in State Taxation, (1946 ed.) pages 109-111; *ibid* (2d ed. 1950) pages 111-113.]

While the plaintiff taxpayer has sustained its burden of proof that the formula upon which the commissioner based his reallocation is [intrinsically] arbitrary and [also] reaches an

---

[7]In the fiscal income year 1942, 76.69 percent of all of the plaintiff's sales were made under such contracts. In 1943, the figure was 95.66 percent; in 1944, 98.77 percent; and in 1945, 98.23 percent.

[8]In a recent law review article it is stated: "Furthermore, the value of property used by a taxpayer in a particular state, whether owned or leased, is some measure of the relative importance of the taxpayer's activities in that state." (Keesling & Warren, *California's Uniform Division of Income for Tax Purposes Act* (1968) 15 U.C.L.A. L.Rev. 655, at p. 657.)

In 1966, the Uniform Division of Income for Tax Purposes Act was added to the Revenue and Taxation Code (§§ 25120-25139). That legislation is not applicable to the years involved in this case. It is to be noted, however, that section 25129 is as follows: "The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the income year and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the income year." In the present case the plaintiff paid no rent to the United States government for facilities furnished.

[9]All or nearly all of the plaintiff's property was located in California. Under the commissioner's limitation of the property factor to property

unreasonable result [in this case[10]], this court is not thereupon empowered to select the factors which would have constituted a proper tax formula in this case since that function was placed in the commissioner to be exercised by the use of sound discretion on his part. [    ].

The judgment is reversed and the case is remanded to the superior court for further proceedings consistent with this opinion.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J. concurred.

---

owned and used by the plaintiff, the property factors for the respective fiscal income years are:

| 1942 | 1943 | 1944 | 1945 |
|------|------|------|------|
| 100% | 99.94% | 99.37% | 93.67% |

The sales factors for those years are:

| 1942 | 1943 | 1944 | 1945 |
|------|------|------|------|
| 85.08% | 68.98% | 57.48% | 48.42% |

The payroll factors for those years are:

| 1942 | 1943 | 1944 | 1945 |
|------|------|------|------|
| 89.51% | 72.78% | 60.23% | 55.20% |

[10]Depending upon the accident of location of owned and non-owned property, there is at least one situation in which the result would be the same, whether the property factor included only property owned by the taxpayer or included both owned and non-owned property. Thus, if for example it happened that 30 percent of the taxpayer's owned property, as well as 30 percent of the total (owned plus non-owned) property used, were located in California, the property factor would be 30 percent in any event.]