DISTRICT OF COLUMBIA, Appellant,

v.

PIERCE ASSOCIATES, INC., Appellee.

No. 80–1102.

District of Columbia Court of Appeals.

Argued Oct. 20, 1981.

Decided Dec. 30, 1981.

Before NEBEKER, MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

This case presents two questions concerning the business income tax laws of the District of Columbia: (1) In determining taxable income of a construction company doing business both inside and outside the District, may the Department of Finance and Revenue apportion the income by reference to a single, "sales factor" formula? (2) May the Department apportion and tax, as business income, the insurance proceeds that a Virginia company received for flood damage to its Virginia plant? The trial court implicitly answered "no" to both questions by granting appellee's motion for summary judgment and awarding appellee a tax refund of $71,144.10 plus interest. We agree. We conclude that D.C.Code 1973, § 47–1580a, as interpreted by the Supreme Court in *General Motors Corp. v. District of Columbia*, 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68 (1965) (construing the same language in D.C.Code 1961, § 47–1580a), precludes the District from applying only a sales factor in apportioning business income. We also conclude that the District, by virtue of the plain language of its own regulation, 16 D.C.R.R. § 309.5(a)(1), may not tax as business income the insurance proceeds that appellee received for damage to its Virginia plant. Accordingly, we affirm.

## I.

Appellee, Pierce Associates, Inc. (Pierce), is a mechanical contractor in the business of furnishing and installing plumbing, heating, air conditioning, and ventilation systems in buildings under construction in the District of Columbia, Maryland, and Virginia. Unlike most mechanical contractors, who subcontract their sheetmetal and sprinkler work, Pierce manufactures its own sheetmetal ducts, automatic sprinklers, and specialties. It has invested more than $1,000,000 in its manufacturing facility, which is located in Virginia. During the

Richard G. Amato, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel and James E. Lemert, Deputy Corp. Counsels and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D. C., were on brief, for appellant.

Jack Rephan, Washington, D. C., for appellee.

taxable years 1975–77, Pierce employed an average of 150 persons at its Virginia plant for an average annual payroll totaling approximately $3,000,000.

Because it conducts business in the District of Columbia, Pierce must pay corporation franchise taxes to the District based on net business income. *See* D.C.Code 1973, § 47–1580.[1] The question is, how much of Pierce's net business income, derived from operations in three jurisdictions, is subject to this tax?[2] Because Pierce, like many businesses, does not keep separate accounts of the income attributable to activities inside and outside the District, respectively, the District must apply a formula to determine the amount of net income allocable to District business. Pierce and the District do not agree on the formula to be used.

For taxable years 1975–77, Pierce apportioned its total business income in accordance with the three-factor formula set out in 16 D.C.R.R. § 309.5(e).[3] According to this formula, the taxpayer first derives the "property factor"

$$\frac{\text{(value of business property within D.C.),}[4]}{\text{(value of total business property)}}$$

the "payroll factor"

$$\frac{\text{(D.C. payroll),}[5]}{\text{(total payroll)}}$$

and the "sales factor"

$$\frac{\text{(sales within D.C.).}[6]}{\text{(total sales)}}$$

Second,

---

1. D.C.Code 1973, § 47–1580 provides in relevant part:

   It is the purpose of this subchapter to impose ... a franchise tax upon every corporation and unincorporated business for the privilege of carrying on or engaging in any trade or business within the District and of receiving such other income as is derived from sources within the District .... The measure of the franchise tax shall be that portion of the net income of the corporation and unincorporated business as is fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District....

2. According to D.C.Code 1973, § 47–1580a:

   If the trade or business of any corporation or unincorporated business is carried on or engaged in both within and without the District, the net income derived therefrom shall, for the purposes of this subchapter, be deemed to be income from sources within and without the District. Where the net income of a corporation or unincorporated business is derived from sources both within and without the District, the portion thereof subject to tax under this subchapter shall be determined under regulation or regulations prescribed by the District of Columbia Council. The Assessor is authorized to employ any formula or formulas provided in any regulation or regulations prescribed by the Council under this subchapter which, in his opinion, should be applied in order to properly determine the net income of any corporation or unincorporated business subject to tax under this subchapter.

3. 16 D.C.R.R. § 309.5(e) (1970), as amended, 22 D.C.R. 5900 (April 26, 1976), provides in part:

   All business income shall be apportioned to the District by multiplying the income by a fraction, the numerator of which is the property factor, plus the payroll factor, plus the sales factor, and the denominator of which is

three, reduced by the number of factors, if any, having no denominator....

4. 16 D.C.R.R. § 309.5(f)(1) (1970) provides:

   Property Factor—The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned by or rented to the taxpayer and used by the taxpayer in the District during the taxable year, and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned by or rented to the taxpayer and used by the taxpayer during the taxable year, except that neither the numerator nor the denominator of the property factor shall include property, or any portion thereof, which is not used to produce business income.

5. 16 D.C.R.R. § 309.5(g)(1) (1970) provides:

   Payroll Factor—The payroll factor is a fraction, the numerator of which is the total compensation paid or accrued by the taxpayer in the District during the taxable year, and the denominator of which is the total compensation paid or accrued by the taxpayer everywhere during the taxable year, except that neither the numerator nor the denominator of the payroll factor shall include compensation paid or accrued to employees for personal services rendered in the production of non-business income. Compensation paid or accrued other than in cash shall be valued at its fair market value as of the date of payment or accrual.

6. 16 D.C.R.R. § 309.5(h)(1) (1970) provides:

   Sales Factor—The sales factor, except for transportation companies, is a fraction, the numerator of which is the total sales of the taxpayer in the District during the taxable year, and the denominator of which is the total sales of the taxpayer everywhere during the taxable year.

the taypayer creates a fraction, the numerator of which is the sum of the three factors "and the denominator of which is three, reduced by the number of factors, if any, having no denominator." *Id.*; note 3 *supra.* Finally, the taxpayer multiplies total business income by this fraction and pays tax on the resulting amount. Pierce accordingly calculated that its tax liability for the three years 1975–77 totaled $135,635.15.[7]

The Department of Finance and Revenue disagreed with Pierce's choice of formula and thus with its calculation. For each taxable year during the 1975–77 period, the Department used a single, "sales factor" in apportioning the income of construction and contracting businesses such as Pierce, an approach authorized by 16 D.C.R.R. § 309.-5(j)(2).[8] To determine Pierce's taxable income, therefore, the Department divided the company's dollar volume of sales within the District by its total sales, and then multiplied Pierce's total net business income by the resulting fraction. The Department also included in Pierce's net business income an additional $78,852.48 representing the insurance proceeds Pierce received for flood damage to its Virginia plant. The Department then determined that Pierce's tax liability for the three-year period totaled $201,032.04 and accordingly assessed a deficiency of $65,396.89 plus $5,747.21 in statutory interest.

Pierce paid and protested the deficiency assessment, but the government declined to abandon the single, sales factor formula. Pierce filed suit and moved for summary judgment, as did the District. The court denied the District's motion while granting judgment of $71,144.10 in Pierce's favor, plus interest at the rate of four percent from the date of overpayment to the date of refund. The District timely noted its appeal. *See* D.C.Code 1973, § 11–721(a)(1); D.C.App.R. 4 II(a)(1).

## II.

■ We consider, first, whether the Department of Finance and Revenue has power to apportion the income of a business, conducted within and without the District, by using a single, sales factor formula.

In *General Motors, supra,* the Supreme Court stated that D.C.Code 1961, § 47–1580a "requires that the net income of a corporation doing business inside and outside the District be deemed to arise from sources situated in like fashion." *Id.* at 557, 85 S.Ct. at 1159. The Court continued:

> To understand the meaning of this limitation, we need but take the simple example of a corporation which has its manufacturing facilities located wholly in Maryland and sells all of its products in the District of Columbia. Application of the Commissioners' [sales factor] formula would result in the allocation of 100% of the corporation's income to the District. Yet there can be no doubt that the busi-

---

7. In Exhibit A of its petition, Pierce inadvertently and incorrectly listed the amount due for 1976 as $119,978.74 and thus the total amount due as $136,528.29. The correct amounts appear in the government's and Pierce's worksheets.

8. Both parties referred to this section as 309.-5(i). The regulations were amended in 1976, and this section was redesignated as 309.5(j). 22 D.C.R. 5900 (April 26, 1976). 16 D.C.R.R. § 309.5(j) provides:

> General Provisions—If the allocation and apportionment provisions of these Regulations do not fairly represent the extent of the taxpayer's trade or business in the District or income from nonbusiness sources within the District, the taxpayer may petition for or the Finance Officer may require, in respect to all or any part of the taxpayer's trade or business or nonbusiness income, if reasonable—
> (1) separate accounting;
> (2) the exclusion of any one or more of the factors;
> (3) the inclusion of one or more additional factors which will fairly represent the extent of the taxpayer's trade or business in the District; or
> (4) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

Here, the Department of Finance and Revenue excluded the property and payroll factors when computing net income subject to District tax.

ness of the corporation is carried on both within and without the District, *viz.*, manufacture in Maryland and sales in the District. The statute does not say that net income shall be deemed to be derived from sources within and without the District only where the *sales* of any corporation are made both within and without the District, which is the effect of the Commissioners' regulation. The statute is phrased more broadly and commands apportionment of income to sources within and without the District whenever "the *trade or business* of any corporation . . . is carried on or engaged in both within and without the District." As it is clear that some part of the trade or business of this hypothetical corporation is carried on without the District, the conclusion follows that the Commissioners must "deem" some part of the income of this corporation to be derived from sources outside the District. [*Id.* at 557–58, 85 S.Ct. at 1159 (emphasis in original).] [9]

*General Motors* is dispositive of this case. By maintaining a plant valued at approximately $1,000,000 in Virginia and paying an average of $3,000,000 per year in wages there, Pierce is doing business in that state. The District's Department of Finance and Revenue, therefore, "must 'deem' some part of the income of this corporation to be derived from sources outside the District." *Id.* at 558, 85 S.Ct. at 1159.

The District argues that *General Motors* is inapplicable because Pierce's manufacturing operations are merely "incidental" to its contracting business. Relying on *United States v. State of New Mexico*, 581 F.2d 803, 810–11 (10th Cir. 1978) and *Dravo Contracting Co. v. James*, 114 F.2d 242, 246–47 (4th Cir. 1940), *cert. denied*, 312 U.S. 678, 61 S.Ct. 450, 85 L.Ed. 1117 (1941), the District claims that it may tax all income derived from service contracts even when the contractor uses materials which "have been fabricated in other states, either by the contractor or by others." *Id.* at 246.

■ We do not read *General Motors* so narrowly as to permit a distinction between taxation of goods produced elsewhere for outright sale in the District, and taxation of goods produced elsewhere for incorporation into construction work here. In any event, *United States v. State of New Mexico, supra,* and *Dravo Contracting Co., supra,* are inapplicable because both concerned state gross receipts taxes (*i.e.,* taxes on gross income from sales of goods and services), not taxes on net business income.[10] When a state taxes gross receipts, the assessor need not consider expenses such as payroll and property because, by definition, he must tax gross—not net—income from sales. In the present case, however—as in *General Motors, supra* —the Department must consider the geographical distribution of expenses as well as income in order to allocate net income attributable to transactions in the District.

■ Accordingly, under D.C.Code 1973, § 47–1580a, as interpreted by *General Motors, supra,* the District may not apply a single, sales factor formula to businesses having operations inside and outside the District.[11] Here, the trial court awarded a

9. D.C.Code 1961, § 47–1580a was not amended between 1965, the year the Supreme Court decided *General Motors, supra,* and 1977, the last tax year at issue in this case. In 1979, the section was amended to authorize the "Mayor", rather than the "Assessor," to compute assessments. Act of Mar. 6, 1979, D.C.Law 2–158, § 4, 25 D.C.R. 7002; *see* note 2 *supra.*

10. In *United States v. State of New Mexico,* 581 F.2d 803, 805 (10th Cir. 1978), the court considered the reach of a four percent tax on "gross receipts," which were defined as " 'the total amount of money or the value of other consideration, received from selling property in

New Mexico . . . or from performing services in New Mexico.' " The statute considered in *Dravo Contracting Co. v. James,* 114 F.2d 242, 244 (4th Cir. 1940) established a two percent tax on "gross income," which included gross receipts derived from the sale of tangible property and services.

11. Pierce argues that 16 D.C.R.R. 309.5(j), *see* note 8 *supra,* which authorizes the Department to modify the three-factor formula when necessary to achieve fairness in a particular case, is invalid. In holding that the District may not apply a single, sales factor formula, we do not reach the question whether 16 D.C.R.R. 309.5(j)

$71,144.10 tax refund plus interest to Pierce based on the three-factor formula. We affirm the trial court's judgment, for, during oral argument, counsel stated that the District did not seek a remand if this court did not sustain its use of the single, sales factor.

## III.

The District also argues that the insurance proceeds Pierce received as compensation for flood damage to its Virginia plant are business income subject to apportionment. We disagree. According to the District's own regulations, these payments constitute nonbusiness income from outside the District and are thus not taxable.

This court must accord substantial deference to any governmental agency's or department's interpretation of its own regulations. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Snider v. Board of Appeals and Review*, D.C.App., 342 A.2d 50, 51 (1975); *Gulf Oil Corp. v. Hickel*, 140 U.S.App.D.C. 368, 373, 435 F.2d 440, 444 (1970). We cannot substitute our own judgment for that of the agency or department unless its application is "plainly erroneous or inconsistent with the regulation." *Snider, supra* at 51; *see Udall, supra*, 380 U.S. at 16, 85 S.Ct. at 801. We are not bound by the agency's interpretation, however, when "the plain language of a regulation simply does not 'bear the construction' furnished by the officer or agency involved." *Gulf Oil Corp., supra* at 373, 435 F.2d at 445. *Cf. DeLevay v. District of Columbia Rental Accommodations Commission*, D.C.App., 411 A.2d 354, 359 (1980) (agency regulation at odds with plain language of statute was unlawful).

would be invalid if applied differently in another case.

Pierce also argues that the single factor approach violated its constitutional rights to equal protection and due process. We do not reach these constitutional issues because we conclude that the single factor formula, as applied here, violates the District's tax law.

12. We understand "management ... of the property," as used in 16 D.C.R.R. § 309.5(a)(1), as amended, 22 D.C.R. 5899 (April 26, 1979), to mean the regular business of managing the property, not merely the use of the property in the business.

The District argues that 16 D.C. R.R. § 309.5(a)(1) "explicitly provides that income from property which is an integral part of the business" is included within the definition of "business income." The District misreads its own regulation, which provides:

"Business income" means income arising from transactions and activity in the regular course of the taxpayers trade, business or profession and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade, business or professional operations. [*Id.*, as amended, 22 D.C.R. 5899 (April 26, 1976).]

Income from the taxpayer's property is includable in "business income" only if the "acquisition, management, and disposition of the property" constitute an "integral part[ ] of the taxpayer's regular trade, business or professional operation[ ]." Accordingly, income from the sale of inventory by a wholesaler, of manufactured goods by a retailer, or of real estate by a developer would constitute business income. In contrast, a one-time sale of real property by a manufacturer, including sale of the manufacturers' plant, would not create business income because the manufacturer is not in the business of selling, let alone acquiring and managing,[12] commercial property. Such a transaction would produce "non-business income" from the sale of a capital asset. *See* 16 D.C.R.R. §§ 309.5(a)(4), 309.-5(d)(1).[13]

13. 16 D.C.R.R. § 309.5(a)(4) (1970) provides:
"Non-business income" means all income other than business income.
16 D.C.R.R. § 309.5(d)(1) (1970) provides:
Allocation of Non-Business Income—Rents and royalties from real or tangible personal property, gains and profits from the sale of property including capital assets, interest, dividends, rents and royalties from patents, copyrights, trademarks, service marks, secret processes and formulas, goodwill, franchises and other like property, certain sales of tangible personal property to the United States government, and any other income from

Similarly, Pierce's insurance reimbursement for the casualty loss of its Virginia plant can be characterized as nonbusiness income akin to that derived from the sale of a capital asset, for we understand that the proceeds compensated for damage to real property, not for damage to inventory. *See* D.C.R.R. 309.5(d)(1); note 14 *infra*; *cf.* I.R.C. § 1231 (treatment of property used in trade or business and involuntary conversions). Because Pierce is a mechanical contractor, not a dealer in real estate, the insurance proceeds are not income attributable to Pierce's regular course of business.

▇▇▇▇▇ The District may tax nonbusiness income only if the taxpayer's commercial domicile or the insured property is located in the District. *See* 16 D.C.R.R. § 309.5(d)(3).[14] Pierce is a Virginia corporation and received payment for losses at its Virginia plant. The District, therefore, may not tax that payment.[15]

sources within the District, to the extent that they constitute non-business income, shall be allocated as provided in subparagraphs (2) through (8) of this subsection.

*Cf.* I.R.C. § 1231(b) (defining property used in trade or business which is subject to capital gains treatment); *Goldberg v. Commissioner of Internal Revenue*, 223 F.2d 709, 712 (5th Cir. 1955) (proceeds of sales of houses made to liquidate assets of a rental business are subject to capital gains treatment, while proceeds of sales made as part of the activities of one engaged in the business of selling houses are subject to treatment as ordinary income).

14. 16 D.C.R.R. § 309.5(d)(3) (1970) provides:
(i) Gains and profits and losses from sales or exchanges of real property located in the District, including capital assets, are allocable to the District.
(ii) Gains and profits and losses from sales or exchanges of tangible personal property, including capital assets, by a taxpayer engaged in trade or business in the District are allocable to the District if:
(a) the property had a situs in the District at the time of the sale, or
(b) the taxpayer's commercial domicile is in the District and the taxpayer is not taxable in the state in which the property had a situs.
(iii) Gains and profits and losses from sales or exchanges of intangible personal property, including capital assets, are allocable to the

## IV.

In summary, the District of Columbia may not use a single, "sales factor" in apportioning the business income of a company that conducts business both within and without the District. *See* D.C.Code 1973, § 47–1580a; *General Motors, supra.* The insurance proceeds Pierce received as compensation for flood damage to its Virginia plant are not taxable as "business income" under 16 D.C.R.R. 309.5(a)(1). Accordingly, we affirm the trial court's judgment awarding Pierce a tax refund of $71,144.10 plus interest.

*Affirmed.*

District if the taxpayer's commercial domicile is in the District.

15. The District cites *Johns-Manville Products Corporation v. Commissioner of Revenue Administration*, 115 N.H. 428, 343 A.2d 221 (1975), *appeal dismissed*, 423 U.S. 1069, 96 S.Ct. 851, 47 L.Ed.2d 79 (1976), for the proposition that reimbursement for the loss of the Virginia plant was taxable business income. First, we do not accept the holding of that New Hampshire case. Second, even if we did, *Johns-Manville* stands for the proposition that income from the sale of an asset which was once "used as an integral part of plaintiff's unitary business" may be taxed by a state other than the state in which the property is located. *Id.* at 430, 343 A.2d at 223. The court did not determine whether income from such a sale arose "from transactions and activity in the regular course of the taxpayers trade, business or profession." 16 D.C.R.R. § 309.5(a)(1). The court concluded only that the property was held for the business purpose of producing profits and thus was taxable. In some cases, such income is taxable in the District of Columbia, but only as "non-business," rather than "business" income. *See id.*, § 309.5(d); notes 13 and 14 *supra*.