Alan N. Charnes Executive Director Colorado Department of Revenue 1375 Sherman Street, Room 486 Denver, Colorado 80203
Dear Mr. Charnes:
I am writing in response to the request of your office for a formal legal opinion concerning the income tax and sales or use tax issues raised by section 168(f)(8) of the Internal Revenue Code enacted by the Economic Recovery Tax Act of 1981. This section, is commonly referred to as the "safe harbor" lease provision, and it provides for the transfer of accelerated cost recovery deductions and investment credits, with respect to newly-acquired qualifying property or equipment, from one party (lessee/user) to another (lessor). Section 168(f)(8) expressly sanctions transactions with no business purpose other than the transfer of tax benefits.
QUESTIONS PRESENTED AND CONCLUSIONS
1. To determine net Colorado corporate taxable income, how are safe harbor lease transactions reflected in the Colorado formula factors for allocation and apportionment purposes.
 Colorado corporate income tax is defined as the taxpayer's federal taxable income if not otherwise modified by statute. Safe harbor lease transactions are not addressed by Colorado tax statutes, therefore Colorado taxpayers must show their federal taxable income as their Colorado net taxable income. Safe harbor lease transactions, standing alone, do not create a presumed presence or nexus in Colorado for tax purposes. All income or deductions created by safe harbor transactions are nonbusiness income, and all safe harbor property is includable in the property factor of the lessee/user.
2. Is the sale and leaseback of tangible personal property which qualifies for federal safe harbor tax benefits, a sale or lease of tangible personal property subject to the Colorado sales or use tax?
 Colorado sales and use tax statutes are independent of both the Federal Internal Revenue Code and the Colorado Income Tax Act of 1964. A transaction which is otherwise taxable under the Colorado sales and use tax statutes does not become exempt because the tangible personal property is subject to safe harbor provisions of the federal or Colorado income tax statutes.
ANALYSIS
Explanation of Safe Harbor Lease Transactions
The Economic Recovery Tax Act of 1981, in section 168(f)(1), provides that certain transactions, which would normally not be considered as true leases, be treated as leases for federal income tax purposes. These transactions, commonly referred to as "safe harbor" transactions, allow a party who has acquired personal property for its own use to transfer the "Investment Tax Credits" and "Accelerated Cost Recovery System" deductions applicable to such property to a corporation while retaining all of the other economic benefits and burdens of ownership. This is accomplished through a nominal sale and a simultaneous leaseback of the personal property pursuant to a lease agreement which qualifies for safe harbor treatment.
Most transactions are structured purely as tax benefit transfers and are commonly called "wash transactions." The typical "wash transaction" involves three steps. First the seller/lessee/user (user) acquires the property with either its own or borrowed funds, and within three months transfers the property to the buyer/lessor (lessor) in a nominal sale in exchange for a cash payment plus a level payment non-recourse note for the balance of the purchase price. Second, the user nominally leases the property back from the lessor under a lease agreement which provides for rental payments exactly equal to the payments of principal and interest due on the non-recourse note. (Thus, no cash is paid out under the lease since the rental expense is exactly offset by the amount of the debt service.) Third, on the termination of the lease term, the user nominally repurchases the property for $1.00.
Typically, the parties characterize the transaction as a sale and leaseback "solely for federal income tax purposes" and mutually elect to treat the leaseback as a lease within the meaning of section 168(f)(8) IRC "solely for federal income tax purposes."
In sum, the lessor in exchange for a cash payment receives the investment credits and the accelerated cost recovery benefits attributable to the property covered by the sale/leaseback agreement and, in addition, incurs tax liability on the excess of the rental income over the interest deductions. The user receives cash plus the right to the net deductions represented by the excess of the rental expense over the interest income.
In some instances the parties to a safe harbor transaction enter into a common lease agreement which also qualifies for section 168(f)(8) benefits, that is, there is an actual sale and lease back agreement intended and entered into. For a general discussion of safe harbor leases see S. Mount, "The Tax Equity and Fiscal Responsibility Act of 1982 — Safe Harbor Lease Provisions," 60 Taxes 707 (Oct. 1982).
Income Tax Consequences (Wash transactions only)
Pursuant to C.R.S. 1973, 39-22-304, the net income of a corporation for Colorado corporate income tax purposes "means the corporation's federal taxable income, as defined in the Internal Revenue Code, for the taxable year, with the modifications specified in this section." Modifications include other statutory sections that, for example, allow the use of a combined report to determine and reflect that income derived from sources within Colorado. See Joslin Dry Goods v.Dolan, 200 Colo. 291, 615 P.2d 16 (1980).
Therefore, for purposes of Colorado corporate income tax, the net income of a corporation, which has become a party to a safe harbor lease, remains the corporation's federal taxable income without modification.
Because safe harbor transactions are, in essence, the transfer of an intangible federal tax benefit created solely to satisfy a federal tax objective, the lessor will not be deemed to have established nexus within Colorado for purposes of Colorado corporate income tax solely as a result of participation, as a nominal purchaser or owner, of the property subject to a safe harbor agreement.
As a general rule in income tax matters, there is no elevation of substance over form. Joslin Dry Goods Co. v. Dolan,supra. In McDonnell Douglas Corp. v.Franchise Tax Bd, 69 Cal.2d 506, 446 P.2d 313 (1968), government-owned equipment, used by an aircraft manufacturer constructing aircraft for the United States Government, was properly included in the property factor because the equipment, regardless of ownership, was used for the production of income within California.
To properly reflect income derived from sources within Colorado safe harbor transactions should not be recognized in the Colorado sales and property factors to apportion a corporation's net taxable income. This would recognize the substantive elements of a safe harbor lease transaction including the possession and use of the property by the lessee/user and the purchase of an intangible tax benefit by a lessor.
Rental and interest income, created by a safe harbor lease transaction, should be treated as allocable nonbusiness income, and not recognized in the sales factor of the lessee/user and the lessor respectively. The cost of the subject property would be reflected in the property factor of the lessee/user. Conversely the lessor should make no property factor adjustments.
2. Sales and use tax consequences
Colorado sales and use tax statutes are independent of both the Internal Revenue Code and the Colorado Income Tax Act of 1964. Safe harbor transactions are subject to sales or use tax when they qualify as a taxable transaction pursuant to the sales or use tax statutes, without regard to the federal safe harbor statutory provisions.
The Colorado Retail Sales Tax Act levies a sales tax on each transaction of sale and purchase of tangible personal property at retail (C.R.S. 1973, 39-26-104(1)(a)). The Act is designed to tax retail sales, which include "all sales made within the state except wholesale sales" (C.R.S. 1973, 39-26-102(9)). A wholesale sale is defined as a sale "to retail merchants, . . . or other wholesalers for resale and does not include a sale by wholesalers to users or consumers not for resale; and the latter sales shall be deemed retail sales, and subject to the provisions of this article" (C.R.S. 1973, 39-26-102(9)).
Tangible personal property is defined by C.R.S. 1973,39-26-102(15) as "corporeal personal property." The fundamental intent of the legislature is to tax tangible personal property which is used and consumed and exempts only that which is sold for resale.Bedford v. CFI, 102 Colo. 538, 81 P.2d 752 (1938).
The general statutory scheme set forth above is modified by C.R.S. 1973, 39-26-102(23) and C.R.S. 1973, 39-26-114(1)(a)(XII). C.R.S. 1973, 39-26-102(23) is applicable to those cases where the right to continuous possession or use for more than three years of any tangible personal property is granted under a lease or contract and such transfer of possession would be taxable if an outright sale were made. The statute treats such lease or contract as a "sale of such article, and the tax shall be computed and paid by the vendor upon the rentals paid."
C.R.S. 1973, 39-26-114(1)(a)(XII) refers to possession or use of property for "three years or less" under lease or contract where the lessor has paid a sales or use tax upon acquisition. A lessor may have the option "to acquire such property free of sales or use tax if the lessor agrees to collect sales tax on all lease payments received on such property."
The lessor in a safe harbor transaction does not intend to obtain possession, use, or control of the property. The agreement contemplates only the purchase of the specified right to use certain federal tax benefits adhering to the tangible property.
The original purchase of the tangible personal property by the user is a transaction subject to sales tax or, if purchased tax free, the use of the property is subject to use tax because all the statutory elements of a sales or use tax liability are present: (1) tangible personal property, (2) purchased at retail, (3) for use and consumption by the purchaser (user) in Colorado. The lessor in a safe harbor wash transaction does not purchase tangible personal property at retail nor does he use such property. Rather the lessor purchases certain tax rights with respect to the subject property, as created by section 168(f)(8) IRC.
This is consistent with the general rule that use tax liability primarily depends on use, not ownership. Tri-StateGeneration, Inc. v. Dept. of Rev., ___ Colo. App. ___,636 P.2d 1335 (1981). Essentially a safe harbor agreement transfers the rights to certain tax benefits and no more. These tax rights are intangible. The transfer to the lessor of tax benefits emanating from tangible personal property does not engender a sales or use tax liability contemplated in the law as a transaction of purchase or use of tangible personal property purchased at retail.
A different situation may arise when the parties to a safe harbor agreement intend and enter into an actual contract of sale of tangible personal property to the lessor and a contract of lease back to the user. This sale transfers ownership and all rights to the property to the lessor; the lease back transfers the right of possession and use of the property to the user.
If the original purchase of the tangible personal property is made by the user with no intent to enter into a safe harbor agreement, the purchase of the property is subject to sales tax. If, at a subsequent date, this same property is subject to a safe harbor agreement, this agreement creates an additional taxable transaction.
SUMMARY
The net income of a Colorado corporate taxpayer means the corporation's federal taxable income as adjusted by safe harbor agreement tax benefits. The purchase of tax benefits, by itself, does not create nexus for Colorado corporate income tax purposes. Rents and interest arising from safe harbor transactions are nonbusiness income, and the property subject to the agreement is included in the property factor of the lessee/user.
Colorado sale and use tax liabilities, resulting from safe harbor transactions, are determined exclusively by the Colorado statutory requirements in article 26 of title 39, C.R.S. 1973, and are not contingent on the federal income tax statutes. Each transaction occurring under a safe harbor agreement is subject to Colorado sales or use tax, if it qualifies as a taxable transaction pursuant to statute.
Very truly yours,
 DUANE WOODARD Attorney General
TAXATION AND REVENUE
C.R.S. 1973, 39-22-301
C.R.S. 1973, 39-22-304
C.R.S. 1973, 39-26-104(1)(a) C.R.S. 1973, 39-26-102(9) C.R.S. 1973, 39-26-102(23) C.R.S. 1973, 39-26-114(1)(a)(XII)
REVENUE, DEPT. OF
Net income of a Colorado corporate taxpayer means the corporation's federal taxable income as adjusted by safe harbor agreement tax benefits. Purchase of safe harbor tax benefits do not create Colorado nexus. Rents and interest arising from safe harbor agreements are nonbusiness income.
Safe harbor transactions are subject to Colorado sales and use tax, if they are taxable transactions pursuant to statute. The purchase of safe harbor tax benefits are not a transaction subject to Colorado sales or use tax.