Filed 4/26/12

# IN THE SUPREME COURT OF CALIFORNIA

DICON FIBEROPTICS, INC. )
)
     Plaintiff and Appellant, )
) S173860
     v. )
) Ct.App. 2/8 B202997
FRANCHISE TAX BOARD, )
) Los Angeles County
     Defendant and Respondent. ) Super. Ct. No. BC 367885
_____ )

The Enterprise Zone Act (Gov. Code, § 7070 et seq.) was enacted "to stimulate business and industrial growth" in "areas within the state that are economically depressed due to a lack of investment in the private sector." (*Id*., § 7071, subd. (a).) Among the incentives available to businesses that operate within an enterprise zone is a hiring tax credit in the amount of a percentage of the wages paid to a "qualified employee." (Rev. & Tax. Code, § 23622.7, subd. (a).) A "qualified employee" is an employee who falls into one of several categories, such as being eligible for the federal Job Training Partnership Act or the Greater Avenues for Independence Act of 1985 (GAIN). To claim the tax credit, the employer must satisfy several requirements, including obtaining from a governmental agency "a certification that provides that a qualified employee meets the eligibility requirements." (Rev. & Tax. Code, § 23622.7, subd. (c).)

Dicon Fiberoptics, Inc. (Dicon) is a California corporation that does business in an enterprise zone. Dicon hired workers for whom it had obtained the required certifications, and it claimed a hiring tax credit. The Franchise Tax

1

Board (FTB) conducted an audit and refused to accept some of the certifications, demanding that Dicon produce documents to establish the workers were "qualified employees." The FTB found that the documents Dicon produced were insufficient, and it denied the requested tax credit in part.

The Court of Appeal ruled that a certification issued by a governmental agency constitutes "prima facie proof a worker is a 'qualified employee.' " The court held that although the FTB may conduct an audit to determine whether an employee actually was "qualified," the FTB bears the burden of rebutting the certification, "typically by proving the worker did not meet the criteria to be a 'qualified employee.' " The Court of Appeal erred in part. As explained below, the FTB may conduct an audit and require the taxpayer to establish that the worker is a "qualified employee" within the meaning of the statute.

FACTS

On March 13, 2007, Dicon filed in the Los Angeles Superior Court a "Complaint for Refund of Amounts Paid" against the FTB. As later amended, the complaint alleged that in November 2003, Dicon timely submitted a claim for a refund of taxes paid for the taxable year ending March 31, 2001. Dicon's submission included a claim in the amount of $3,157,119 for the enterprise zone hiring tax credit set forth in Revenue and Taxation Code section 23622.7.

Dicon alleged that it had obtained certifications (commonly called vouchers) from "the California agency . . . statutorily authorized to review, process and certify tax credit eligibility." The amended complaint further alleged that, in response, the FTB demanded "documentation that was outside Dicon's possession, custody and control . . . that the Revenue and Taxation Code does not require a taxpayer to keep once certification from an authorized vouchering agency has been obtained and which the vouchering agency had specifically informed Dicon that it was not required to keep." According to the amended complaint, "the

2

documents sought were readily available to the FTB through the vouchering agency that issued the certification." Dicon alleged that "in order to receive the tax credit, only two things are required of an employer: first, the employer must obtain (from an authorized agency) a certification that provides that a qualified employee meets the eligibility requirements; and second, the employer must retain a copy of the certification and provide it upon request to the FTB."

As indicated in the FTB's "Notice of Action" on the request for refund, the FTB "made adjustments based on the field audit schedules dated 07/07/06" and approved an enterprise zone hiring tax credit of $2,052,127, or roughly two-thirds of the amount Dicon claimed. After Dicon's appeal to the State Board of Equalization was dismissed, Dicon sued for the remaining $1,104,992 that the FTB had refused to refund. In its demurrer to the amended complaint, the FTB argued that Dicon had not alleged a cause of action "because the [FTB] was not required to accept the vouchers issued for enterprise zone hiring credit and was authorized by law to require that Dicon provide documentation to support the enterprise zone hiring credit before allowing the tax deduction."

The superior court sustained the FTB's demurrer without leave to amend, concluding that under Revenue and Taxation Code section 19504, the FTB "may, for purposes of administrating its duties, *including ascertaining the correctness of any return*, demand taxpayers to provide information or make available for examination or copying any books, papers or other data which may be relevant to that purpose." The court further observed that "Rev[.] and Tax[.] Code [section] 19032 requires defendant, as soon as practicable after the return is filed, to examine it and determine the correct amount of tax." The case was dismissed, and Dicon appealed.

The Court of Appeal reversed. It ruled that the superior court erred in sustaining the demurrer because all that Dicon was required to allege in order to

3

state a cause of action was that "plaintiff paid the tax, filed a tax return, requested the refund, and the tax authority denied the refund." In the alternative, the Court of Appeal ruled that "if a cause of action for a tax refund must identify the taxing authority's particular legal error in denying the refund," the superior court erred in denying Dicon leave to amend its complaint to allege that the FTB conducted its audit improperly.

The Court of Appeal then went beyond those rulings to address "the unanswered legal question looming over these proceedings: Does FTB's authority to examine and audit tax returns permit FTB to reject a voucher issued by a local employment or social services agency?" Rather than hold that the FTB has the authority to simply reject a voucher, the Court of Appeal held that "vouchers are prima facie proof a worker is a 'qualified employee,' " and the "FTB bears the burden of rebutting the voucher's prima facie value, typically by proving the worker did not meet the criteria to be a 'qualified employee.' In trying to meet that burden, FTB may not rely on the employer's failure to produce during the audit documents establishing a worker's eligibility to the extent regulations governing the tax credit charge the enterprise zone, not the employer, with the obligation to maintain documents of workers' eligibility."

The FTB did not challenge the Court of Appeal's ruling that the superior court erred in sustaining the demurrer without leave to amend. Instead, the FTB sought review of the portion of the decision that addressed the FTB's authority to reject a voucher, framing the issue as follows: "When an employer seeks a tax refund from the Franchise Tax Board for allegedly hiring a qualified employee under Revenue and Taxation Code section 23622.7, and the employer's only supporting documentation is a voucher issued by an enterprise zone agency, is the voucher prima facie evidence that a worker is a 'qualified employee' that shifts the burden of proof to the Board?" We granted the FTB's petition for review.

4

For the reasons that follow, we conclude that the FTB may conduct an audit to determine whether a taxpayer is entitled to the enterprise zone hiring tax credit. During such an audit, the FTB may require the taxpayer to establish that the worker is a "qualified employee" within the meaning of the statute. The FTB is not required to accept a certification or voucher as conclusive or prima facie proof that an employee is qualified, nor is the FTB required to establish that the worker is not a "qualified employee" under Revenue and Taxation Code section 23622.7, subdivision (c).

## DISCUSSION

The Enterprise Zone Act (Gov. Code, § 7070 et seq.) was enacted "to stimulate business and industrial growth in the depressed areas of the state by relaxing regulatory controls that impede private investment." (*Id.*, § 7071, subd. (a).) Under specified circumstances, Revenue and Taxation Code section 23622.7, subdivision (a), permits a taxpayer that "employs a qualified employee in an enterprise zone" to claim a tax credit for five years. The amount of the credit is 50 percent of the employee's "qualified wages" in the first year and decreases incrementally to 10 percent of "qualified wages" in the fifth year. (*Id.*, § 23622.7, subd. (a).) (Further undesignated statutory references are to the Revenue and Taxation Code.)

Subdivision (b) of section 23622.7 defines several terms used in the statute. "Qualified wages" may not "exceed 150 percent of the minimum wage," must be received during the five-year period beginning when the employee begins work, and must meet other criteria. (§ 23622.7, subd. (b)(1).) To be a "qualified employee," at least 90 percent of the employee's services must "directly relate[] to the conduct of the taxpayer's trade or business located in an enterprise zone," and the employee must perform at least 50 percent of his or her services in the enterprise zone. (*Id.*, subd. (b)(4)(A).) In addition, the employee must come

5

within one of several categories. These include being eligible for services under the federal Job Training Partnership Act or being eligible to be a "registrant" under GAIN. (*Id.*, subd. (b)(4)(A)(iv)(I), (II).) They also include being "an economically disadvantaged individual"; a "dislocated worker"; a "disabled individual who is eligible for . . . a state rehabilitation plan or is a service-connected disabled veteran, veteran of the Vietnam era, or veteran who is recently separated from military service"; an "ex-offender"; a "person eligible for" one of several forms of government financial assistance; or a "member of a federally recognized Indian tribe," among other categories. (*Id.*, subd. (b)(4)(A)(iv)(III)–(XI).)

Subdivision (c) of section 23622.7 requires that "[t]he taxpayer shall do both of the following: [¶] (1) Obtain from [certain governmental agencies] a certification that provides that a qualified employee meets the eligibility requirements . . . ." and "(2) Retain a copy of the certification and provide it upon request to the Franchise Tax Board." During the tax year at issue, and when Dicon's claim for a tax refund was submitted, subdivision (c)(1) of section 23622.7 required the taxpayer to obtain the certification "from either the Employment Development Department, as permitted by federal law, or the local county or city Job Training Partnership Act administrative entity or the local county GAIN office or social services agency, as appropriate . . . ." (Former § 23622.7, subd. (c)(1) as amended by Stats. 2000, ch. 862, § 78, p. 6208.) In 2004, section 23622.7 was amended to also permit the taxpayer to obtain the certification from "the local government administering the enterprise zone." (§ 23622.7, subd. (c)(1) as amended by Stats. 2004, ch. 225, § 67, p. 2510.)

In the Court of Appeal, Dicon argued that by requiring the taxpayer to obtain from certain governmental agencies "a certification that provides that a qualified employee meets the eligibility requirements" (§ 23622.7, subd. (c)(1)),

6

the Legislature had charged those agencies with the responsibility for determining whether a worker was a "qualified employee" within the meaning of section 23622.7. According to Dicon, the Enterprise Zone Act did not authorize the FTB to review the local agency's determination that an employee was qualified. The FTB countered that nothing in the Enterprise Zone Act limits the FTB's general authority to conduct an audit (§ 19032) and to require taxpayers to provide information that is relevant to an audit (§ 19504).

The Court of Appeal adopted a middle ground. While agreeing with the FTB that it had the authority to audit certifications, the court also agreed in part with Dicon that the certification constitutes prima facie proof that the employee is qualified and shifts the burden to the FTB to prove during an audit that the employee is not qualified. This approach, however, is not compelled by the language of the Enterprise Zone Act or by the law governing the FTB's general powers.

Section 19032 confers broad authority on the FTB to "examine" a tax return and to "determine the correct amount of the tax." Section 19504 provides that the FTB, in conducting an audit, "shall have the power to require by demand, that an entity of any kind including . . . employers . . . provide information or make available for examination or copying . . . any book, papers, or other data which may be relevant to that purpose." Title 18, section 19032, subdivision (a)(5) of the California Code of Regulations, titled "Duty to Maintain Records," states: "Generally, it is the taxpayer who will be in possession or control of the necessary information, documents, books and records and who will have the knowledge regarding the circumstances of the relevant activities such that a determination of the correct tax can be made. . . . A taxpayer has a duty to maintain relevant records and documents . . . ." (See also § 19133 [authorizing FTB to assess a penalty where taxpayer fails to provide requested information].)

7

Further, section 19801 provides that the FTB, in determining the correct amount of tax, is not "bound by the determination of any other officer or administrative agency of the state."

In adjudicating tax disputes, we have said that "[t]ax credits are a matter of legislative grace" and that statutes granting tax exemptions must be strictly construed against the taxpayer, "resolving any doubts in favor of the [FTB]. [Citations.]" (*General Motors Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 773, 790 (*General Motors*).) "In a suit for refund of tax, the burden of proof is on the taxpayer. [Citation.] The taxpayer must not only prove that the tax assessment is incorrect, but also he must produce evidence to establish the proper amount of the tax. [Citations.] In an action for refund, 'the taxpayer has the burden of proof to show that he is entitled to his claim. He cannot assert error and thus shift to the state the burden to justify the tax. . . .' " (*Honeywell, Inc. v. State Bd. of Equalization* (1982) 128 Cal.App.3d 739, 744; *Apple, Inc. v. Franchise Tax Bd.* (2011) 199 Cal.App.4th 1, 22.)

While acknowledging this background law, Dicon argues that it is superseded by section 23622.7 because " 'a special statute dealing with a particular subject constitutes an exception so as to control and take precedence over a conflicting general statute on the same subject.' " (*Turlock Irrigation Dist. v. Hetrick* (1999) 71 Cal.App.4th 948, 953.) However, we agree with the FTB that the certification scheme set forth in the Enterprise Zone Act need not be construed to conflict with the general statutes and legal principles concerning the FTB's authority.

As a textual matter, we find nothing in section 23622.7 that displaces or qualifies either the FTB's statutory authority to conduct an audit or the general principle in our case law that the taxpayer has the burden of proof in a suit for a refund. By its terms, section 23622.7 does not abrogate the general rule that the

8

FTB is not "bound by the determination of any other officer or administrative agency of the state." (§ 19801.) Nor does the text of section 23622.7 otherwise limit the FTB's authority or expressly designate the certifying agencies as the exclusive arbiters of who is a qualified employee. Although obtaining a voucher is necessary for an employer to claim a hiring tax credit, the statute does not say that doing so shall be sufficient and conclusive in every case. The Enterprise Zone Act was enacted against the backdrop of the general statutes conferring broad power on the FTB as well as our precedents placing the burden of proof on the taxpayer. In the absence of express language limiting that background law, we are reluctant to read section 23622.7 to effectuate an implied repeal. (See *Shatz v. Allen Matkins Leck Gamble & Mallory* (2009) 45 Cal.4th 557, 573 [" ' " '[A]ll presumptions are against a repeal by implication. [Citations.]' [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes, and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' [Citation.]" ' [Citation.]"].)

Despite no textual inconsistency between section 23622.7 and the general statutes concerning the FTB's authority, the Court of Appeal reasoned that a voucher constitutes prima facie evidence that a worker is a qualified employee because "[t]he employer's compliance with the statute ought to count for something." Dicon similarly argues that "[i]t would make no sense" for the Legislature to authorize various agencies to make discretionary certification decisions, only to have those decisions second-guessed by the FTB. Dicon argues that the FTB may not reject a voucher on the ground that it disagrees with a reasonable contrary determination by the certifying agency that the worker is a qualified employee. However, upholding the FTB's authority to independently determine whether a worker is a qualified employee would not render pointless or

9

nonsensical the certification process set forth in section 23622.7, subdivision (c). Even if the FTB may later examine the validity of the certification and require the taxpayer to prove that the employee is qualified, requiring the taxpayer to obtain a voucher from a governmental agency decreases the chance that a taxpayer will improperly claim the tax credit through fraud or mistake. The FTB may rely upon this certification if it so chooses, and the Attorney General has acknowledged that the FTB likely will do so "perhaps even in most cases," to the employer's benefit.

As the FTB explains in its opening brief: "It is . . . reasonable to conclude that vouchers provide for an additional level of review which may satisfy the Board in some cases, while not in others. For example, in some cases the Board's review of a statistically significant sample of an employer's vouchers may convince it that the vouchers were properly issued only for eligible workers. In this case the Board may accept the vouchers without demanding the production of specific documentation of worker eligibility, or without any additional investigation. In other cases, though, the review of the employer's vouchers may raise concerns with the Board, or even reveal that vouchers were improperly issued. In these cases the Board will prudently demand evidence or documentation of worker eligibility. The Board is not required to audit every voucher in every case, just as it is not required to audit every taxpayer's return; in fact, the Board's limited budget effectively prevents this as a practical matter. In fact, given budgetary constraints, one would expect that the Board's review of employee eligibility would probably occur only in those cases where it has information that vouchers may have been improperly issued." The FTB cites several weaknesses in the vouchering process that could lead the FTB to audit a voucher, noting that "at the time the vouchers were issued in this case there were *no* statutory or regulatory requirements regarding the documentation required to obtain or issue a voucher. In addition, there is no requirement for an agency that

10

issues vouchers to communicate at all with the employees for whom it is required to supply vouchers, and vouchers may be retroactively issued years after the employment takes place.  [¶]  Nor, until new regulations that became effective November 27, 2006, was there even a requirement that enterprise zone agencies keep voucher records.  [Citation.]"

We find reasonable the FTB's view that "[t]he voucher process complements the review/audit process and enhances its efficiency by allowing the Board to rely on vouchers in those situations where it has confidence in their accuracy, while requiring evidence in those cases where it does not."  Because the FTB's interpretation of section 23622.7 is reasonable, there is no statutory conflict that requires the certification process to be harmonized with the laws governing the FTB's authority in the particular way urged by Dicon and the Court of Appeal.

Dicon argues that the FTB should not be permitted to displace the judgment of a governmental agency with expertise that the FTB lacks.  But there is nothing to indicate that the FTB has arbitrarily or unreasonably questioned expert determinations in this case or in other audits of the hiring tax credit.  Title 18, section 19032, subdivision (a)(4) of the California Code of Regulations requires the FTB to "apply and administer the law in a reasonable, practical manner."  In other circumstances, we have said that the FTB may not abuse its discretion, although it is the taxpayer's burden to show by clear and convincing evidence that the FTB acted arbitrarily or unreasonably.  (See *McDonnell Douglas Corp. v. Franchise Tax Bd.* (1968) 69 Cal.2d 506, 512;  *RKO Teleradio Pictures, Inc. v. Franchise Tax Bd.* (1966) 246 Cal.App.2d 812, 819.)  As explained above, it is not unreasonable for the FTB to require a taxpayer to prove that a worker meets the statutory definition of a qualified employee when the FTB lacks confidence in a voucher's accuracy.  We can address situations in which the FTB is alleged to have acted arbitrarily or unreasonably if and when they arise.

11

Dicon further argues that it is unfair — "a trap for the unwary," as Dicon puts it — for the FTB to require proof beyond a voucher because section 23622.7, subdivision (c) "expressly limit[s] the taxpayer-employer's record-keeping obligations" to retaining the voucher. It is true that section 23622.7, subdivision (c) requires the taxpayer to retain the voucher and to present it upon request to the FTB. But nothing in the statute expressly limits the taxpayer's record-keeping obligations to retaining the voucher, nor does the statute otherwise relieve the taxpayer of its general obligation to retain tax documents. (See § 19504 [FTB may require employers to provide information relevant to determining correct amount of tax]; Cal. Code Regs., tit. 18, § 19032, subd. (a)(5) ["A taxpayer has a duty to maintain relevant records and documents . . . ."].)

Dicon contends that section 23622.7, subdivision (c), by simply instructing the employer to "[r]etain a copy of the certification," implies that an employer need not retain the documents it submitted to the certifying agency. Dicon represents in this court that it intends to amend its complaint to allege that the FTB, despite having all the records that were submitted to the certifying agencies, demanded additional documents that had not been submitted to the certifying agency. Dicon argues that it was not required under section 23622.7, subdivision (c), to retain or submit documents that were not submitted to the certifying agency. As reasonable as those interpretations may be, however, we cannot say that they are the only reasonable interpretations of the statute. The FTB contends, reasonably in our view, that section 23622.7, subdivision (c) does not displace the general recordkeeping requirements applicable to all taxpayers. Whatever ambiguity may exist in the statute, it does not amount to a trap for the unwary. For we have made clear, long before Dicon filed its claim, that we construe statutes governing tax credits "strictly against [the taxpayer], resolving any doubts in favor of the [FTB]." (*General Motors*, *supra*, 39 Cal.4th at p. 790, citing *Miller*

12

*v. McColgan* (1941) 17 Cal.3d 432, 442; see also *Pacific Company, Ltd. v. Johnson* (1931) 212 Cal. 148.)

Perhaps the strongest point raised by Dicon is that "[t]he statutory incentive for hiring disadvantaged workers would be diluted by exposing Enterprise Zone employers to the risk that agency certification determinations might be undone years later by FTB auditors simply because the FTB disagrees with discretionary determinations made by the certifying agencies." Amicus curiae California Taxpayers' Association (Association) echoes the concern that "taxpayers will not take advantage of tax incentives if they prove to be unpredictable." The Association argues that one legislative purpose of requiring the taxpayer to obtain the certification "is to provide taxpayers with advance assurance that they will be able to take advantage of the hiring tax credit." In support of these claims, Dicon and the Association rely on the legislative history of the certification scheme.

The certification scheme was added to the statute in 1994. (Stats. 1994, ch. 755, § 3, p. 3737.) Prior to this amendment, from 1991 to 1994, former section 23622, subdivision (c), had defined a qualified employee as one who was actually "receiving subsidized employment training, or services funded by the federal Job Training Partnership Act," was a "registrant" under GAIN, or had been "certified eligible by the California Employment Development Department under the federal Targeted Jobs Tax Credit Program . . . ." (§ 23622, subd. (c), as amended by Stats. 1991, ch. 472, § 25, p. 2311.) As introduced, the 1994 amendment proposed expanding two of the three categories defining qualified employees to include persons *eligible for*, even if not actually receiving, services under the federal Job Training Partnership Act or benefits under GAIN. (Sen. Bill No. 1770 (1993-1994 Reg. Sess.) § 2, as introduced Feb. 24, 1994.) But the proposal did not require the taxpayer to obtain a certification.

The Assembly Committee on Revenue and Taxation stated: "The purpose of the bill is to broaden the pool of individuals whom an Enterprise Zone employer can hire and still qualify for the EZ hiring tax credit. Supporters argue that hiring individuals who are eligible for various job training and social service programs fulfills the same goals as hiring a participant in those programs." (Assem. Rev. & Tax. Com., Analysis of Sen. Bill No. 1770 (1993-1994 Reg. Sess.) as amended June 2, 1994, for hearing Aug. 15, 1994, pp. 2-3.) The Assembly Committee also noted, however, that the bill did not provide a means for establishing eligibility for these programs: "As currently drafted, no documentation of eligibility would be required, opening the door for potential abuse of the credit. [¶] If the intent of this measure is to insure that benefits are targeted to the disadvantaged, should employers be required to obtain proof of an individual's status in order to claim the credit?" (*Id*. at p. 3.) In response to this concern, the bill was amended on August 22, 1994 to add the certification scheme set forth in section 23622.7, subdivision (c). (Sen. Bill No. 1770 (1993-1994 Reg. Sess.) § 2, as amended Aug. 22, 1994.)

According to Dicon, this legislative history shows that the certification scheme was adopted in order to balance the Legislature's dual goals of encouraging employers to hire disadvantaged workers and preventing mistake or fraud. We agree. But the specific question we face is whether the Legislature, in striking that balance, sought to *supplement* or *supplant* the FTB's general audit authority with the certification scheme. We find nothing in the legislative history decisively resolving that question, and it is not unreasonable to think that the Legislature added the certification scheme on the assumption that the FTB's audit authority, though insufficient by itself to prevent abuse of the tax credit, would remain intact. The certification scheme, so construed, provides employers with a strong hiring incentive because "the Board may accept [a certification] without

14

further documentation or an audit, as it often does." Although Dicon is correct that the hiring incentive would be incrementally stronger if a certification were prima facie (or conclusive) evidence that a worker is a qualified employee, the corresponding risk of abuse would be greater as well. The legislative history does not illuminate whether such incremental incentive and incremental risk were specifically intended by the Legislature when it adopted the certification scheme.

Dicon and the Association further argue that the FTB itself recognized that a voucher conclusively proves a worker is a qualified employee when the FTB, in analyzing a 2004 bill to amend the Enterprise Zone Act, said: "The vouchering process serves numerous functions for all parties affected, including the taxpayer, FTB, and DCHD [Department of Housing and Community Development] such as: [¶] . . . [¶] 2. Provides an up-front verification process for taxpayers regarding the determination of whether a potential employee is a 'qualified employee.' [¶] 3. Minimizes intrusiveness into the employee's personal life and provides confidentiality for the employee since the agency that administers the public assistance program is the one that issues the voucher. [¶] 4. Allows the employer (taxpayer) to retain less documentation to support a claim that an employee is a 'qualified employee.' [¶] 5. Promotes consistency in application of the definition of a 'qualified employee' . . . by requiring those most familiar with (and responsible for administering) the public assistance statutes to determine whether a potential employee is a 'qualified employee.' [¶] 6. Allows FTB to verify an employee's eligibility if the hiring credit is reviewed during an FTB audit examination. [¶] 7. Allows both FTB and DHCD to verify that the credit is limited to individuals and businesses that qualify for the credit as the Legislature intended." (FTB, Analysis of Sen. Bill No. 1097 for Sen. Budget Com. (2003-2004 Reg. Sess.) as amended July 27, 2004, p. 3, available online at

15

<https: www.ftb.ca.gov/law/legis/03_04bills/sb1097_072704.pdf> [as of Apr. 26, 2012].)

For the same reasons we have given above, these statements do not necessarily mean that the FTB must be barred from looking behind a certification during an audit. The certification process serves many useful functions in the usual circumstance where the FTB has confidence in the accuracy of the certifying agency's determinations. Acknowledging those functions does not necessarily rule out the possibility of an independent audit where the FTB lacks confidence in the certification process.

Our conclusion is supported by the fact that another portion of the 2004 bill that amended the Enterprise Zone Act demonstrates that the FTB had the authority to reject a voucher. The 2004 legislation amended Government Code section 7076 to direct the Department of Housing and Community Development to assess a fee for each application for issuance of a certificate pursuant to section 23622.7. (Stats. 2004, ch. 225, § 14, p. 2456.) The statute as amended further stated: "Any fee assessed and collected . . . shall be refundable if the certificate issued . . . is not accepted by the Franchise Tax Board." (*Ibid.*)

In addition, information pamphlets issued by the FTB in earlier tax years reflect that the FTB viewed the vouchers as only the minimum documentation required. In FTB publication No. 1047, 2001 Guidelines for Enterprise Zone Tax Incentives Record Keeping, the FTB stated at page 4: "If you hire qualified employees and claim this credit on your tax return, keep records including (*at least*): [¶] Copies of Form TCA EZ1 for each qualified employee hired; [¶] Records of any other federal or state subsidies you may have received for hiring qualified employees;" and specified information about each employee and his or her hours, wages, job site, and duties. (Italics added, available online at <https://www.ftb.ca.gov/forms/misc/1047.pdf> [as of Apr. 26, 2012].) Thus, it

16

appears the FTB has viewed a voucher as necessary, but not necessarily sufficient, to qualify for the hiring tax credit.

In sum, the text and history of section 23622.7, subdivision (c) may suggest — but do not compel — the conclusion that the Legislature intended the FTB to accept a certification as conclusive or prima facie proof that a worker is a qualified employee. Because "[t]he taxpayer has the burden of showing that he clearly comes within the exemption" (*Hospital Service of California v. City of Oakland* (1972) 25 Cal.App.3d 402, 405), and because "the statute must be construed liberally in favor of the taxing authority, and strictly against the claimed exemption" (*ibid.*), we hold that section 23622.7, subdivision (c) neither prohibits the FTB from independently examining whether a worker is a qualified employee nor shifts the burden of proof to the FTB where the employer has obtained a voucher. In adopting the certification process, the Legislature reasonably could have intended to strengthen the employer's hiring incentive while refusing to require the FTB to accept a possibly erroneous certification. We find nothing in the statute or its legislative history decisively indicating that the Legislature intended to strike a different balance by altering the well-established rules that put the burden on the taxpayer to prove it is entitled to a credit and that confer broad power on the FTB to conduct an audit and to demand whatever information it needs to determine the correct amount of tax.

Our holding is consistent with the administrative decision of the State Board of Equalization (SBE) in *In re Appeal of Deluxe Corp.* (Dec. 12, 2006, No. 297128, 2006-SBE-003) 2006 Cal. Tax Lexis 432, that the FTB "does have the authority to review and disallow hiring credit vouchers." (*Id.*, 2006 Cal. Tax Lexis 432, at p. *19.) "The Legislature has delegated to the SBE the duty of hearing and determining appeals from actions of the FTB. [Citation.]" (*Citicorp North America, Inc. v. Franchise Tax Bd.* (2000) 83 Cal.App.4th 1403, 1418.)

17

"Although we are not bound by administrative decisions construing a controlling statute, we accord ' "great weight and respect to the administrative construction." ' [Citations.] The amount of deference given to the administrative construction depends ' "upon *the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control*." ' [Citation.]" (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 524.)

The SBE concluded in *Deluxe Corp.* that section 23622.7 "does not address [the FTB]'s role in reviewing the validity of vouchers; the section neither requires not prohibits [the FTB]'s audit of vouchers." (*In re Appeal of Deluxe Corp.*, *supra*, 2006 Cal. Tax Lexis 432, at pp. *16-17.) Thus, the Board relied, as we do, on the FTB's "general authority to review returns and ascertain the correct tax" and its power "to require by demand that any entity provide information relevant to the purpose of administering [the FTB]'s duties (including ascertaining the correctness of any return)." (*Ibid.*)

The SBE's decision in *In re Appeal of Cort* (May 21, 1980, No. 80-SBE 055) 1980 WL 4984) is distinguishable. That decision interpreted former section 17299, which provided that "a taxpayer who derives rental income from substandard housing" may not claim various tax deductions. (*Id.*, 1980 WL 4984, at p. *2.) The statute defined substandard housing as "housing which (1) has been determined by a state or local government regulatory agency to violate state law or local codes . . . ." (*Ibid.*) The SBE ruled that the language of former section 17299 "quite clearly requires the determination that property constitutes substandard housing to be made solely by the regulatory agency, be it state or local. No discretion is placed either in [the FTB] or in this board to review that determination." (*In re Appeal of Cort*, *supra*, 1980 WL 4984, at p. *3.) The

18

difference between former section 17299 and section 23622.7 is that former section 17299 defined substandard housing as housing that the state or local agency had determined violated state or local law. Once the agency so determined, the definition was satisfied. Section 23622.7 does not define a qualified employee as one who has been determined to be qualified by a designated agency. Whether an employee is qualified depends upon whether the employee meets the criteria specified in section 23622.7, not upon whether the designated agency has determined the employee is qualified. The contrast between former section 17299 and section 23622.7 shows that the Legislature knows how to make an agency determination conclusive upon the FTB when it wishes to do so.

For the foregoing reasons, we conclude that the FTB may conduct an audit to determine whether a taxpayer is entitled to the enterprise zone hiring tax credit. During such an audit, the FTB may require the taxpayer to establish that the worker is a "qualified employee" within the meaning of the statute. The FTB is not required to accept a certification or voucher as conclusive or prima facie proof that an employee is qualified, nor is the FTB required to establish that the worker is not a "qualified employee" under section 23622.7, subdivision (c).

19

**DISPOSITION**

We reverse the Court of Appeal's holding that a certification issued by a governmental agency for purposes of the hiring tax credit under Revenue and Taxation Code section 23622.7 constitutes "prima facie proof a worker is a 'qualified employee,' " which shifts to the Franchise Tax Board the "burden of demonstrating an employee is not a qualified worker for which no voucher should have issued." In all other respects, the Franchise Tax Board does not challenge the Court of Appeal's judgment, and it is affirmed.

LIU, J.

WE CONCUR:  CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Dicon Fiberoptics, Inc. v. Franchise Tax Board

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 173 Cal.App.4th 1082
**Rehearing Granted**

_____

**Opinion No.** S173860
**Date Filed:** April 26, 2012

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Mel Red Recana

_____

**Counsel:**

Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Thomas R. Freeman, Paul S. Chan; Dakessian Law Firm, Akerman Senterfitt, Reed Smith, Mardiros H. Dakessian; The California Credits Group, LaShelle T. Wilson and Mark Danscecs for Plaintiff and Appellant.

Winston & Strawn, Charles J. Moll III, Krista M. Enns and Linda T. Coberly for California Taxpayers' Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Silverstein & Pomerantz, Amy L. Silverstein and Edwin P. Antolin for Deluxe Corp. as Amicus Curiae on behalf of Plaintiff and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, David S. Chaney and Dane R. Gillette, Chief Assistant Attorneys General, Gordon Burns, State Deputy Solicitor General, Paul D. Gifford and Pamela C. Hamanaka, Assistant Attorneys General, W. Dean Freeman, Felix E. Leatherwood, Mark P. Richelson and Ronald N. Ito, Deputy Attorneys General, for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Thomas R. Freeman
Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067-2561
(310) 201-2100

W. Dean Freeman
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013-1230
(213) 897-2489