Filed 4/16/25

**CERTIFIED FOR PUBLICATION**

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MEDTRONIC USA, INC., | |
| Plaintiff and Appellant, | |
| v. | A169290 |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, | (City & County of San Francisco Super. Ct. No. CGC-22-599205) |
| Defendant and Respondent. | |

Medtronic USA, Inc., (Medtronic) manufactures "RICMS," two types of insertable cardiac monitors, which it describes as "slim, headless heart monitoring devices that are implanted subcutaneously in a patient's chest that captures ECG [electrocardiogram] needed by a physician to diagnose and make informed decisions about syncope patients and those whose experience transient symptoms that may suggest a cardiac arrhythmia. The RICMs automatically record the patient's ECG upon detecting cardiac arrhythmias." The California Department of Tax and Fee Administration (Tax Department) collected sales tax upon the sale of those devices. Medtronic maintained that the devices are exempt from tax by reason of Revenue and Taxation Code

1

section 6369[1] and an administrative measure known as Regulation 1591 (Cal. Code Regs, tit. 18, § 1591), on the basis the devices came within the definition of "medicines" in section 6369. And after it exhausted administrative attempts to have the sales tax reduced or returned, Medtronic commenced this action for refund of the amounts collected, plus interest, totaling $3,329,195.79. That action was unsuccessful, the trial court granting summary judgment to the Tax Department.

Medtronic appeals, attempting to persuade us that both the Tax Department and the trial court erred in reading the cited authorities as not exempting RICM from tax. That appeal is also unsuccessful, and we affirm.

### The Governing Law—And Some Applicable Principles

Section 6369 has two parts. The first, subdivision (a), states the general principle that "medicines" are exempt from computation of sales tax. (See § 6351.) The wording of the six sub-subdivisions seem to assume that "medicines" is being used in the most common understanding, namely pharmaceuticals that are: (1) "sold" to a professional licensed to prescribe them; or (2) "prescribed" by such a professional; or (3) "furnished" by the professional or a "health facility"; or (4) "sold" or "furnished" to such professionals or to a public "medical facility or clinic."

Subdivision (b) then states the general principle that " 'Medicines' as used in this section, means any substance or preparation intended for use by external or internal application to the human body in the diagnosis, cure, mitigation, treatment, or prevention of disease and commonly recognized as a substance or preparation intended for that use." (§6369, subd. (b).)

---

[1] Statutory references are to this code unless otherwise noted.

2

But subdivision (b) then qualifies this broad statement with the proviso that " 'medicines' does *not* include any of the following:

"(1) Any auditory, prosthetic, ophthalmic, or ocular device or appliance.

"(2) Articles that are in the nature of splints, bandages, pads, compresses, supports, dressings, instruments, apparatus, contrivances, appliances, devices, or other mechanical, electronic, optical, or physical equipment or article or the component parts and accessories thereof.

"(3) Any alcoholic beverage the manufacture, sale, purchase, possession or transportation of which is licensed and regulated by the Alcoholic Beverage Control Act . . . ."  (Emphasis added.)

Subdivision (c) of section 6369 doubles back on subdivision (a) and, "Notwithstanding subdivision (b)," sets forth various categories of non-pharmaceutical products and devices that *are* included in the definition of "medicine":

"(1) Sutures, whether or not permanently implanted.

"(2) Bone screws, bone pins, pacemakers, and other articles, other than dentures, permanently implanted in the human body to assist the functioning of any natural organ, artery, vein, or limb and which remain or dissolve in then body."

As noted, Medtronic also relies on Regulation 1591, which regulation has an unusual length, making it far too prolix to be included here.  The portion relied on by Medtronic in a substantive sense will be quoted below.

Turning to some principles, first and foremost is that we are dealing with a statutory system of taxation, as to which California has near plenary power in how it chooses to structure that system.  "Where taxation is concerned and no specific federal right . . . is imperiled, the States have large leeway in making classifications . . . .  As stated in *Allied Stores of Ohio v.*

3

*Bowers* [(1959)] 358 U.S. 522, 526–527: [¶] 'The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guarantees of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. . . . [There is] no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State . . . is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value.' " (*Lehnhausen v. Lake Shore Auto Parts Co., Inc.* (1973) 410 U.S. 356, 359–360, fn. omitted; accord, *Amador Valley Joint High School Dist. v. State Board of Equalization* (1978) 22 Cal.3d 208, 233–234.) "[T]he states . . . are not confined to a formula of rigid uniformity in framing measures of taxation. [Citations.] They may tax some kinds of property at one rate, and others at another, and exempt others altogether." (*Charles C. Steward Machine Co. v. Davis* (1937) 301 U.S. 548, 584; accord *Miller v. Department of Human Resources Dev.* (1974) 39 Cal.App.3d 168, 171.)

A corollary of this freedom is that the State is not required to grant exemptions, which are an expression of legislative grace. Nor is the State limited in the number or scope of the exemptions it chooses to grant. This power is inherent in the State's power to tax. (E.g., *Independent Warehouses Inc. v. Scheele* (1947) 331 U.S. 70, 86; *Morning Star Co. v. Board of Equalization* (2011) 201 Cal.App.4th 737, 756.)

Next, because they must have a legislative source, " '[e]xemptions from taxation must be found in the statute.' " (*Garrett Corp. v. State Board of Equalization* (1961) 189 Cal.App.2d 504, 509, quoting *Market Street Railway*

4

*Co. v. California State Board of Equalization* (1955) 137 Cal.App.2d 87, 96; accord, e.g., *Chemed Corp. v. State Board of Equalization* (1987) 192 Cal.App.3d 967, 974; *Anaconda Co. v. Franchise Tax Board* (1982) 130 Cal.App.3d 15, 30.)  Moreover, exemption statutes are strictly construed, being accepted only when clearly mandated, and rejected in any doubtful case.  (E.g., *Dicon Fiberoptics, Inc. v. Franchise Tax Board* (2012) 53 Cal.4th 1227, 1241; *Beatrice Co. v. State Board of Equalization* (1993) 6 Cal.4th 767, 775.)

Finally, Medtronic's arguments are heavily reliant on extrapolating logic.  "If X is exempt then it follows the Y should likewise be exempt."  "If pacemakers are exempt, then so should our RICMs."  But Holmes taught us the law has never been a slave to logic.  (Holmes, The Common Law (1881) § 1.)  And, as just established, this is especially true with respect to schemes of taxation, which has led a number of United States Supreme Court justices to note ruefully that " 'Logic and taxation are not always the best of friends.' " (*Commissioner v. Estate of Hubert* (1997) 520 U.S. 93, 111 (concurring opn. of O'Connor, Souter, & Thomas, JJ., quoting *Sonneborn Brothers v. Cureton* (1923) 262 U.S. 506, 522, (concurring opn. of McReynolds, J.).)

## DISCUSSION

The briefs are replete with subtle and arcane reasoning that is required by the subject matter and the governing authorities.  The crux of the parties' dispute, and its resolution, centers on the interplay between two provisions of section 6369 and the parallel language in Regulation 1591 to one of the statutory provisions.

On the one hand, the statute specifies that " 'medicines' does not include . . . instruments, apparatus, contrivances, appliances, devices, or other mechanical, electronic, optical, or physical equipment or article."

(§ 6369, sub. (b)(2).)  On the other hand, it directs that " 'medicines' . . . includes . . . articles . . . permanently implanted in the human body to assist the functioning of any natural organ . . . and which remain or dissolve in the body."  (*Id.*, subd. (c)(2).)

In the words of the Tax Department:  "The word 'device' refers to a piece of equipment or a mechanism designed to serve a special purpose or perform a special function.  [Citing Merriam-Webster Dictionary.]  [Citation omitted.]  Applying that definition, it is undisputed that the RICMs are devices because they are designed to monitor heart rhythms.  Thus, the RICMs are not 'medicines' under Section 6369, subdivision (b)(2) and Regulation 1591, subdivision (c)(2)."[2]  And, the Tax Department goes on, RICMs "monitor heart rhythm and collect information about irregular heart rhythms.  As part of the monitoring process, they classify certain types of heart rhythms based on information they collect.  As monitoring devices, the RICMs do not assist in the functioning of any organ . . . within the meaning of Section 6369, subdivision (c)(2).  Because the RICMs do not qualify as 'medicines' under Section 6369, subdivision (c)(2), the exclusion from the

---

[2] "(c) Exclusions from the Definition of 'Medicines' . . . [¶] . . . [¶] . . . (2) Articles which are in the nature of splints, bandages, pads, compresses, supports, dressings, instruments, apparatus, contravances, appliances, devices or other mechanical, electronic, optical or physical equipment or article of the component parts and accessories thereof.  'Medicines' does not include arch supports, cervical pillows, exercise weights (boots or belts), hospital beds, orthopedic shoes and supportive devices (unless an integral part of a leg brace or artificial leg), plastazote inserts, plastazote shoes, plastic shoes (custom or ready made), sacro-ease seats, shoe modifications, spenco inserts, traction units (other than those fully worn on the patient), thermophore pads, nor foot orthoses."  (Regulation 1591, subd. (c)(2).)

6

'medicines' definition under Section 6369, subdivision (b)(2) and Regulation 1591, subdivision (c)(2) controls, and the RICMs are taxable as devices."

Medtronic assails this reasoning as a "mechanical interpretation." Medtronic looks to the language in subdivision (b)(2) extending exemption to articles "that are in the nature of" what are thereafter specified. Based upon this language, Medtronic looks for relief under the canon of *ejusdem generis*, contending as follows: "The phrase 'in the nature of' means ' "similar in type of or having the characteristics of." ' [Citations.] Thus, to ascertain the meaning of regulation 1591(c) and section 6369(b)(2), one must first identify the similar characteristics or qualities of the items listed in those provisions. The one—and the only—quality that the articles identified in those provisions share is that they are applied *externally* to the patient. Splints, bandages, compresses, pads—not to mention arch supports, pillows, and hospitals beds—are all applied externally to restore a patient to health. In other words, none of these items are permanently implanted in the body, like [RICMs] are."

Finally, Medtronic says this: "Here, both sections [*sic*] 1591(c)(2) and 6369(b)(2) list specific types of medical devices and equipment (such as splints and supports) that share the common feature of application to the external body of the patient. The terms 'device' and 'equipment' therefore should be construed, under the doctrine of *ejusdem generis*, as referring to other articles that likewise are applied externally to the patient. [Citation.] . . . . Medtronic's RICMs are permanently implanted inside the body—not externally—to capture the patient's heart rhythms so that doctors can diagnose a heart disease of the patient."

Medtronic's argument is not persuasive.

"*Ejusdem generis* ' "instructs that 'when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope.' " ' " (*In re Corinne W.* (2009) 45 Cal.4th 522, 531.) " 'Maxims of statutory construction, including the doctrine of *ejusdem generis*, are not immutable rules but instead are guidelines subject to exceptions. . . . "[*E*]*jusdem generis* is only an aid in getting the meaning and does not warrant confining the operations of a statute within narrower limits than were intended." ' " (*Stone v. Alameda Health System* (2024) 16 Cal.5th 1040, 1076.)

Remembering that we are looking to the statutory language, the first difficulty for Medtronic is that an internal versus external distinction is addressed in section 6369. The mention is in its subdivision (b), the generic definition of "medicines" as "any substance or preparation intended for external or internal application to the human body in the diagnosis, cure, mitigation, treatment, or prevention of disease and commonly recognized as a substance or preparation intended for that use." Indeed, by invoking subdivision (b) Medtronic is accepting its own description of RICMs as being devices: RICMS are certainly not a "substance" or a "preparation." Given that this is the sole statutory linkage of internal-external application, we cannot read it into a different provision of the same statute. (E.g., *Reliable Tree Expert v. Baker* (2011) 200 Cal.App.4th 785, 796 [" 'A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed.' "]; *Pacific Gas & Electric Co. v. Public Utilities Commission* (2015) 237 Cal.App.4th 812, 853 [same].)

The parties engage in a peripheral dispute about whether in subdivision (b)(2) the Legislature "intended to exclude all devices" from the

8

statutory definition of "medicines."  The express inclusion of "pacemakers" in subdivision (c)(2) conclusively proves that the Legislature included at least one device.  That others may be excluded is of no moment, given the Legislature's undoubted power to "tax some kinds of property . . . and exempt others."  (*Charles C. Steward Machine Co. v. Davis*, *supra*, 301 U.S. at p. 584.)  This is an unmistakable indication of legislative intent that *ejusdem generis* cannot overcome.  (See *Stone v. Alameda Health System*, *supra*, 16 Cal.5th at p. 1067 [*ejusdem generis* not available "if application . . . would frustrate the [legislative] intent underlying the statute"].)

Moreover, the commonality noted by Medtronic is not the only one that may be discerned:  it could just as convincingly be said that the items in subdivision (b)(2)—"in the nature of splints, bandages, pads, compresses, supports, dressings"—could be classified as temporary in nature.  (§ 6369, subd. (b)(2).)

Finally, *ejusdem generis* is ordinarily pegged to the presence of statutory language that is of a general nature.  (See *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 ["*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa. . . . The canon presumes that if the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage."].)  General language is missing from subdivision (b)(2), whose language is confined to specifics.

Medtronic's next stop is subdivision (c)(2), which exempts "articles [that are] permanently implanted in the human body to assist the functioning of any natural organ"—language, it contends, that is a perfect fit for their RICMs.  It being undisputed that the devices are "permanently implanted,"

9

the issue then is whether they "assist the functioning" of the heart. Medtronic insists its devices satisfy this requirement because: "The word 'assist' means 'to give support or aid.' [Citing Merriam-Webster Dictionary.] A 'function' is '[t]he action for which a . . . thing is particularly fitted or used or for which a thing exists.' [Same.] So as a matter of plain language, section 6369(c)(2) applies if Medtronic's [RICM's] support the heart in performing the action for which it exists: to wit, circulating blood (and oxygen) throughout the body."

Here, although Medtronic does not expressly reinvoke *ejusdem generis*, the concept is helpful to consider because subdivision (c)(2) does have both general and specific language—"Bone screws, bone pins, pacemakers, and other articles." But each of the specific instances "assist the functioning of [an] organ" by themselves. Unlike RICMs, they do not serve an intermediate purpose such as alerting a physician that additional measures may be required. Pacemakers do not have this attenuation. By contrast, RICMs by definition serve a purely informational function that requires subsequent human intervention to "assist the functioning" of the heart. Indeed, Medtronic frankly admits that the function of RICMs is diagnostic, a subject mentioned in subdivision (b) of section 6369 and expressly tied to "any substance or preparation." What Medtronic seeks is, we conclude, more than the Legislature intended with subdivision (c)(2).

At oral argument, counsel for Medtronic laid particular emphasis on the word "assist" in the "assist the functioning of any natural organ" language in subdivision (c) (2) of section 6369. But resort to the broad scope of that language ultimately proves self-defeating. Those words do not have an obvious limit and are thus completely at odds with strictly construing that statute.

Medtronic's final contention is one the Tax Department says was forfeited because it did not make its first appearance before the trial court. Medtronic acknowledges, however vaguely, that the argument it makes here was "not the focus in the court below," its reply brief admitting that it "could have addressed the issue more thoroughly." A more precise description is that the "argument" below was all of 13 lines, and essentially cited nothing other than some language in the regulation. Given that, we could easily treat the argument as forfeited. In any event it has no merit.

Medtronic relies on language in Regulation 1591(b)(2), which in general tracks that of section 6369, subdivision (b)(2). However, the Regulation adds the following: "In addition, articles permanently implanted in the human body to mark the location of a medical condition, such as breast tissue markers, qualify as medicines." This language introduces a concept not found in the statute. Whether the language constitutes an improper enlargement of the statutory exemption is a question not presented for decision, and we express no opinion on it. It is enough to reiterate that exemptions "must be found in the statute" (*Chemed Corp. v. State Board of Equalization, supra,* 192 Cal.App.3d at p. 974; *Garrett Corp. v. State Board of Equalization, supra,* 189 Cal.App.2d at p. 509), a basis Medtronic has been unable to find. Regulation 1591 cannot ride to the rescue.

Medtronic is in the unenviable position of having a product whose function touches several of the concerns of section 6369 and Regulation 1591. Unfortunately, those touches are too tenuous to establish the firm basis needed for an exemption. Any remaining doubt—and there is none—would be vanquished by the policy that an attempt to prove an exemption is construed strictly against the taxpayer. (*Dicon Fiberoptics, Inc. v. Franchise*

11

*Tax Board, supra,* 53 Cal.4th at p. 1241; *Beatrice Co. v. State Board of Equalization, supra,* 6 Cal.4th at p. 775.)

## DISPOSITION

The summary judgment is affirmed.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P.J.

_____

DESAUTELS, J.

(A169290P)

Superior Court for the City & County of San Francisco

Hon. Curtis E.A. Karnow

Greenberg Traurig, G. Michelle Ferreira, Bradley R. Marsh; Jones Day, Brian D. Hershman, Nathaniel B. Garrett for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tamar Pachter, Senior Assistant Attorney General, Michael D. Gowe, Karen W. Yiu and Rachel Yoo Deputy Attorneys General for Defendant and Respondent.